Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania *v.* Joyce E. Metzger, Appellant.

572

Argued October 7, 1976, before President Judge BOWMAN and Judges CRUMLISH, JR., and WILKINSON, JR., sitting as a panel of three.

*Matthew D. Carrafiello,* for appellant.

*Charles G. Hasson,* Assistant Attorney General, with him *Sydney Reuben,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., February 14, 1977:

Joyce E. Metzger (Claimant) was last employed as an administrative assistant by Kent-Harris Corporation (Kent), Bala Cynwyd, Pennsylvania, at $175.-00 per week for a period of twenty (20) months. Her last day of work occurred on April 30, 1975. Claimant filed an application for unemployment benefits on June 15, 1975.

After working on April 30, 1975, Claimant left for a vacation in Iran and was expected to be back at work on Tuesday, May 27, 1975. Prior to leaving, Claimant asked if she might extend her vacation but Kent indicated this was impossible. While overseas, Claimant became ill and underwent treatment by an Iranian physician from May 23, 1975 until June 9, 1975 for pneumonia. Claimant requested that a traveling companion cable her sister in the United States with the information that she would not be leaving Iran on the day expected and that her sister (Mrs. Margaret Coyle) was to advise Kent of this. It is undisputed by both Kent and Mrs. Coyle that such call was made, although both parties are vague as to the exact time. Kent claims that the call from Claimant's sister made no mention of either illness or an expected return date. Claimant's witness, Mrs. Coyle, testified that she detailed the nature of Claimant's disability to Kent and the uncertainty of her return date. On or about Thursday, May 29, 1975, Steven Berger, of Kent, telephoned Claimant's mother and inquired about Claimant's return. When Mrs. Anna Metzger could not give him any definite word, he indicated that he would be required to replace Claimant with another employe. Claimant returned to the United States on June 10, 1975, and upon her return, Claimant called Kent and inquired about her unemployment compensation benefits. Mr. Berger testified that he had hired temporary help from an employment service during the weeks ending June 6, June 13 and June 20, 1975, and did not replace Claimant until June 20, 1975.

The Bureau of Employment Security (Bureau) determined Claimant to be ineligible for benefits under Section 402(b)(1) of the Unemployment Compensation Law, Act of December 5, 1936, P.L. (1937) 2897,

*as amended,* 43 P.S. §802(b)(1). Upon Claimant's appeal, the referee affirmed the Bureau's determination and, in so doing, made six findings of fact. In the fourth finding, the referee determined that Kent was not told as to Claimant's probable return date nor was he informed as to the reason for her absence. The Unemployment Compensation Board of Review (Board) disallowed Claimant's further appeal, thereby affirming the referee's decision and adopting his findings of fact. Hence, this appeal.

Section 402(b)(1) provides that an employe shall be ineligible for benefits if he or she leaves work voluntarily without a cause of a necessitous and compelling nature.

It is clear from the record that Claimant did indeed succumb to pneumonia during her stay in Iran and that she cabled to a relative to inform her employer of her inability to return on the date specified. However, it was the employer's position, as documented by testimony of record, that the failure to return was caused as follows:

"Q. So, Mr. Berger, would you tell us just what happened to cause this separation?

"A. On April 30th she went on vacation and she was to return on the 27th. On the . . . a couple days before she was to return I got a call from her sister or sister-in-law telling me she got a telegram from Joyce saying that she would not be returning from vacation as she intended to and that was the only thing she knew. As to when she would be returning she said she had no idea. She didn't say she was sick or anything . . . any excuse whatsoever. I said okay, can you give me an approximate time or date? She said that is all she knew. That is all the telegram said. We waited . . . she was due back on Tuesday the last day of vacation (phonetic) and that follow-

ing week . . . during that week I called her mother
and said anything from Joyce yet and she said no, she
doesn't know when she is returning or what. I said it
has been . . . you know, we have been without a secre-
tary for almost a month now . . . it was a month. We
have no alternative but to hire another secretary if
she is not coming back. So her mother says fine. That
was the extent of it. There was nothing ever said
about her being sick or anything similar to that.

"Q. When was she to report (phonetic)?

"A. It wasn't until . . . in here . . . June 20th. In
fact she worked for us for a year and eight months.
We give her a three weeks paid vacation and I think
(inaudible) that we didn't intend to fire her and that
our terms were good when she left and if she would
have returned she would have had a job."

Both the testimony of Claimant, and that of her sis-
ter, directly contradicted the statement that the em-
ployer was not informed of the reason for Claim-
ant's late return and Claimant argues that on this
basis there is evidence supportive of the fact that
Claimant did have a cause of a necessitous and com-
pelling nature for her failure to return. Claimant ar-
gues that it was quite reasonable for Claimant to in-
form her employer of the illness via a third party
given her inability to inform him directly. Yet, the
referee found as a fact that the third party communi-
cation did not specify illness as the reason for not re-
turning to work, and we are in no position to change
such a determination given the employer's testimony
supporting that finding.

We agree with the referee's characterization of this
factual matrix to the extent that Claimant's failure to
sufficiently contact her employer following the expira-
tion of her leave of absence to inform him as to when
and if she was returning to work, amounted to an

abandonment of the employment relationship resulting in her being replaced at the job. Her failure to take the necessary minimal steps to preserve the employment relationship necessitates the affirming of the disallowance of benefits. That a contrary result could have been reached by the referee on the present state of facts is most evident; however, the fact-finder chose to find more credible that evidence tending to establish an unexplained reason for abandonment of the employment relationship. Given this credibility determination, this Court must

ORDER

AND Now, this 14th day of February, 1977, the order of the Unemployment Compensation Board of Review is hereby affirmed.