Maxine M. Helsel, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 8, 1980, before President Judge CRUMLISH and Judges MACPHAIL and WILLIAMS, JR., sitting as a panel of three.

*Jeffrey H. Gribb,* for petitioner.

*Steven Marcuse,* with him *David R. Confer,* Assistant Attorneys General, *Richard Wagner,* Chief Counsel, and *Edward G. Biester, Jr.,* Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, October 22, 1980:

Maxine M. Helsel (Claimant) appeals to this Court from an order of the Unemployment Compensation Board of Review (Board) affirming the decision of a referee which denied unemployment compensation benefits to Claimant. The referee, in affirming the determination of the Bureau (now Office) of Employment Security (Bureau), found that Claimant voluntarily terminated her employment without cause of a necessitous and compelling nature and, therefore, was ineligible to receive benefits under the provisions of Section 402(b)(1) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(b) (1). For the reasons which follow, we affirm.

Claimant was employed by Proctor Silex Corporation (Employer) as an assembler at the average rate of $3.04 per hour from November 15, 1977 until June 16, 1978 at which time she was laid off due to a plant shut down. Claimant's last day of work was August 7, 1978, the first day of her return to work after she was recalled. On that day Claimant, after a brief assignment to the motor line, was directed to return to her regularly assigned department. Her supervisor then reassigned Claimant to work on the Juicit line.[1] Claimant refused the assignment. Upon Claimant's refusal to comply with his work order, the foreman

---

[1] The record does not contain evidence as to the nature of work required by the assignments given to Claimant. The record does indicate, however, that Claimant had previously worked on the Juicit line.

took her to the Personnel Office where he directed her to either resign or be terminated. After a discussion with the Personnel Manager, Claimant signed a resignation slip and left Employer's premises.

The issue presented for our consideration is whether the events described render Claimant's termination of employment voluntary or involuntary.[2] The referee found as facts that Claimant walked off her job and was not discharged. Claimant maintains, however, that while she did refuse to work on the Juicit line, her supervisor's action in directing her to resign or be terminated was tantamount to a firing. Although conflicts do exist in the record, we affirm the referee's findings.

This Court's scope of review in unemployment compensation appeals where the decision below was adverse to the party who bore the burden of proof before the Board, is limited to determining whether the findings of fact are consistent with each other and with the conclusions of law and whether the findings can be sustained without a capricious disregard of competent evidence. *Sweigart v. Unemployment Compensation Board of Review*, 47 Pa. Commonwealth Ct. 421, 408 A.2d 561 (1979). Whether an employee's unemployment is a result of voluntarily leaving work is a question of law and properly subject to our review. The resolution of that legal question normally depends upon the underlying findings of fact. *Sears, Roebuck & Co. v. Unemployment Compensation Board of Review*, 39 Pa. Commonwealth Ct. 170, 394 A.2d 1329 (1978). Finally, we note that this Court must examine the testimony in the light most favorable to the party

---

[2] Although Claimant's statement of the issue is phrased differently in the brief submitted, it is clear from the argument put forth in that brief that a determination as to whether Claimant voluntarily terminated her employment is indeed the ultimate issue for our consideration.

in whose favor the Board rendered its decision. *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977).

With respect to the severance of an employment relationship, the term "voluntary" has been defined by the Superior Court to mean leaving on one's own motion as opposed to being discharged. *Labor and Industry Department v. Unemployment Compensation Board of Review,* 133 Pa. Superior Ct. 518, 3 A.2d 211 (1938). "[W]here the employe, without action by the employer, resigns, leaves or quits his employment, his action amounts to 'voluntarily leaving work,'. . . ." *Id.* at 522, 3 A.2d at 214. In order for an employer's actions to constitute a discharge, they must demonstrate the "immediacy and finality of a 'firing'." *Sweigart, supra* at 425, 408 A.2d at 563.

In the instant case, the record reveals that in her summary interview with the Bureau, Claimant wrote that she "did refuse to work on the jusit [sic] line— and when they told me I was to work there or else— I went home." At the hearing before the referee, the following exchange between the referee and Claimant occurred:

QR: You were given the alternative, either do the job; or go home?

AC: Right.

QR: You were given the alternative, either do the job on the Juicit line or go home?

AC: I said that I won't work there and that was it. . . . I didn't say anything else.

This testimony indicates that Claimant left her employment on her own initiative. Other testimony, however, shows some confusion over whether Claimant voluntarily left or was discharged. Claimant's supervisor testified that, "I took her to personnel and I said she resigned or she is terminated." The Personnel Manager testified that Employer's policy is that "if

you refuse to work, it is insubordination'' and that as a result of Claimant's failure to work she was "[t]erminated, walked off the job.'"[3]

After a thorough review of the record we conclude that, as a matter of law, the Board did not err in finding that Claimant voluntarily terminated her work. We also find substantial evidence in the record to support the referee's findings of fact which were affirmed by the Board.[4] Claimant clearly did not intend to comply with her work assignment. The fact that her supervisor expressed a willingness to fire her if she did not formally resign does not alter the impact of her actions. When told she would have to work or go home, Claimant chose to go home. Furthermore, "[t]he fact

---

[3] Despite any existing conflicts in the record, we have found no evidence to support Claimant's contention that she was coerced into signing the resignation slip.

[4] Claimant argues that the Board capriciously disregarded testimony which allegedly demonstrates that continuing employment with Employer was *not* available to Claimant, contrary to the referee's finding that it was, and that Claimant had no option but to resign. The testimony involved was the following question asked of the Personnel Manager:

QR: If the claimant, once she got to you, had she said something like, 'I didn't realize how serious this was, I'll do my job' . . . . . . would you have permitted her to do it?

A: No, *not under the circumstances.* The remark was made that she wasn't going to do the job and she made the remark that she wasn't going to work for [the foreman], . . . . (Emphasis added.)

We find no fault with the referee's finding as to this point. The question posed by the referee was in the form of a hypothetical, but the Personnel Manager's response was phrased in terms of the actual circumstances of the case. Those circumstances were that Claimant at no time indicated that she would be willing to work on the Juicit line. Thus, *under the circumstances* there was no reason to consider the possibility of Claimant's return to her job. As Claimant stated in her testimony, "I made my mind up I wouldn't work on the line, on the [J]uicit line." Accordingly, we find no capricious disregard of the evidence.

that conflicting evidence is presented does not mean that there is no substantial evidence to support the eventual finding since it is the function of the Board, and not this Court, to resolve questions of credibility and conflicts in testimony." *Martin v. Unemployment Compensation Board of Review,* 36 Pa. Commonwealth Ct. 304, 306, 387 A.2d 998, 1000 (1978). In a voluntary termination case if a claimant asserts that he did not leave employment voluntarily, the burden of proving that point lies with him. *Bowman v. Unemployment Compensation Board of Review,* 49 Pa. Commonwealth Ct. 170, 410 A.2d 422 (1980). Claimant has not met her burden.

Because we have found that Claimant voluntarily terminated her employment, we must also determine whether she has met her burden of proving a necessitous and compelling reason for the termination. *Bowman, supra.* From her testimony it appears that Claimant's refusal to work was based on the lower wage she believed she would receive while working on the Juicit line as well as her dissatisfaction with the foreman when he would not assign another worker to the line in Claimant's place. "It is well settled law that dissatisfaction with wages and working assignments does not constitute cause of necessitous and compelling nature for terminating ones [sic] employment." *Happe v. Unemployment Compensation Board of Review,* 39 Pa. Commonwealth Ct. 486, 487, 395 A.2d 701, 701 (1979).

The order of the Unemployment Compensation Board of Review is affirmed.

### ORDER

AND Now, this 22nd day of October, 1980, the Order of the Unemployment Compensation Board of Review, Decision Number B-165989, dated November 20, 1978 is hereby affirmed.