565 A.2d 127

Lea MONACO and Alba Caruso, Appellants,

v.

COMMONWEALTH of Pennsylvania, UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Appellee.

Supreme Court of Pennsylvania.

Submitted May 3, 1989.

Decided Oct. 17, 1989.

Silvio F. Modafferi, Philadelphia, for appellants.

James K. Bradley, Asst. Counsel, Clifford F. Blaze, Deputy Chief Counsel, Sandra S. Christianson, Chief Counsel, Harrisburg, Maribeth Wilt–Seibert, Asst. Counsel, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

NIX, Chief Justice.

This appeal requires this Court to determine whether the Commonwealth Court erred in affirming the decision of the Unemployment Compensation Board of Review ("Board") that the appellants, Lea Monaco and Alba Caruso, had not been terminated from their employment but had voluntarily

quit. The appeal centers around two issues; (1) the intent of an employee to voluntarily quit, and (2) the sufficiency of "necessary and compelling" reasons to excuse voluntary termination.

This appeal is the result of a heated dispute between the agent of an employer, Jacob Siegel Company, and two employees of that company. The appellants were employed at that company as sewing machine operators. They were paid on a piece-work basis until sometime in late May, 1982.[1] At that time new machinery was introduced to the plant and pursuant to a union-management agreement the employees were to be temporarily paid at an hourly rate, while they became accustomed to the new machine. After a few days of the hourly pay the employees were switched back to the piece-work rate they had been paid previously. The appellants protested the change because they were fearful that they would not be able to produce an adequate income on this pay scale, but the manager assured the employees that any problem in the pay scale would be worked out with the union. The appellants were not placated by these assurances and told their manager that they were going to union headquarters. The manager replied that they could leave if they did not like the situation, "there's the door". He also stated "as soon as you walk out from that door, out of my place, you quit the job." Appellants then left the premises and went directly to the union headquarters where they were told that they had been fired.

Appellants filed for unemployment compensation benefits with the Office of Employment Security, but were denied those benefits when that office determined that the appellants had voluntarily quit their employment. An appeal was filed, and hearings were held before a referee. That referee affirmed the earlier determination. Separate appeals were taken to the Board, and it confirmed the denial of benefits. A joint appeal was taken to the Commonwealth

1. Appellant Lea Monaco had been employed at Jacob Siegel Company of Philadelphia for approximately five years and appellant Caruso had been employed by the same company for approximately six years.

Court, and a divided panel affirmed the decision of the Board by Memorandum opinion (*Doyle, J.,* Palladino, J.; Colins, J., dissenting). That court held that the employees had voluntarily quit their jobs because they had left the premises without permission after being given a *real* choice of working or resigning. This allowance of appeal was granted to resolve the issue of whether the decision of the Commonwealth Court is contrary to existing precedent. For the following reasons we conclude that the decision of that court and the earlier determinations, that these employees voluntarily quit their jobs, were proper according to the existing precedent in this Commonwealth and therefore must be affirmed.

 The first issue to be addressed is whether the employees voluntarily quit their jobs, thereby precluding entitlement to unemployment benefits. 43 P.S. § 802(b).[2] The resolution of such an issue requires a determination of the intent of the employees. Case law has established "a finding of voluntary termination is essentially precluded unless the claimant had a conscious intention to leave his employment." *See, e.g., Roberts v. UCBR,* 61 Pa.Commw. 21, 432 A.2d 646 (1981). Furthermore, the case law supports the appellants' contention that leaving the premises is not enough to determine intent to voluntarily terminate employment. *See, e.g., Philadelphia Parent Child Center, Inc. v. Unemployment Compensation Board of Review,* 44 Pa.Commw. 452, 403 A.2d 1362 (1979). However, where an employee without any action of the employer resigns, leaves or quits employment that action amounts to a voluntary leaving. *See, e.g., Helsel v. Unemployment Compensation Board of Review,* 54 Pa.Commw. 320, 421 A.2d 496 (1980).

**2.** 43 P.S. § 802(b) in pertinent part states:
**Ineligibility for compensation**
An employe shall be ineligible for compensation for any week—
(b) In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, ....
*As amended* 1981, Oct. 22, P.L. 301, No. 106 § 1. It also should be noted that the facts in this case may have also supported a denial of unemployment benefits under section 802(e) for willful misconduct, but that question is not before this Court.

In all cases the totality of the circumstances surrounding the incident must be considered when determining the intent to quit. *See, e.g., Philadelphia Parent Child Center, supra.*

■ Finally, it must be noted that employers have always been entitled to modify the employment specifications with regard to time, place and manner. *See, e.g., Donaldson v. Unemployment Compensation Board of Review,* 91 Pa. Commw. 366, 496 A.2d 1370 (1984); *Mosebauer v. Unemployment Compensation Board of Review,* 61 Pa.Commw. 269, 433 A.2d 599 (1981). The only restriction upon that privilege is the requirement that the employers act reasonably and in good faith. *See, e.g., Donaldson, supra; Dinges v. Unemployment Compensation Board of Review,* 28 Pa.Commw. 306, 369 A.2d 898 (1977).

■ In the instant case, the appellants suggest that they did not voluntarily quit but were terminated when the manager stated "there's the door." They cite as authority *White v. Unemployment Compensation Board of Review,* 200 Pa.Super. 357, 188 A.2d 759 (1963), in which similar language was determined by that court to constitute involuntary termination. However, these cases are distinguishable. In *White,* the petitioner was not offered a choice of remaining or leaving. Here the appellants had an alternative to the termination. They could have remained on the premises for the completion of the day and taken up a complaint at the union headquarters at a later time. It does not appear from these facts that the employer in this instance acted unreasonable or in bad faith. Here, the employer was merely attempting to return the employees to their previous form of payment within the limits of the union management agreement. The manager attempted to quell the financial concerns of the employees by stating that the union would work out any problems with the pay scale. These employees were offered a real choice between alternatives and chose to leave their employment. *See, e.g., Helsel, supra.*

Additionally, the language of the employer here was not sufficient to provide the finality and immediacy required to establish a discharge. *See, e.g., DeMelfi v. Unemployment Compensation Board of Review,* 65 Pa.Commw. 577, 442 A.2d 1249 (1982); *Chinn v. Unemployment Compensation Board of Review,* 57 Pa.Commw. 582, 426 A.2d 1250 (1981). The employer offered the appellants an opportunity to remain employed but refused to allow them an opportunity to leave the premises, during working hours, to speak to a union representative. It was not unreasonable for the employer to require the employees to complete the full working day. Moreover, the record does not suggest that this requirement would have precluded the employees' immediate access to the union. Without any effort on the part of the employees to preserve their employment, the characterization by the manager, that the act of walking out the door would be an act of quitting, must be accepted. *See, e.g., Ryan v. Unemployment Compensation Board of Review,* 68 Pa.Commw. 207, 448 A.2d 713 (1982); *Metzger v. Unemployment Compensation Board of Review,* 28 Pa. Commw. 571, 368 A.2d 1384 (1977). Therefore, this Court is constrained to agree with the Board and the Commonwealth Court that the employees voluntarily terminated their employment by leaving the premises when permission to do so was reasonably withheld.

█ The consideration of this case does not end with the determination that the appellants voluntarily quit because voluntary termination is not an absolute bar to the recovery of unemployment benefits. *Genetin v. Unemployment Compensation Board of Review,* 499 Pa. 125, 451 A.2d 1353 (1982); 43 P.S. § 802(b). Claimants are permitted to prove "necessary and compelling" reasons that could excuse the voluntary action of the employees. *Deiss v. Unemployment Compensation Board of Review,* 475 Pa. 547, 381 A.2d 132 (1977); *Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977). In *Taylor,* this Court clearly set forth the standard from which necessary and compelling reasons can be judged.

[I]t can be said that "good cause" for voluntary leaving one's employment (*i.e.,* that cause which is necessitous and compelling) results from circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner. *Id.* at 358–359.

Mere dissatisfaction with wages or working conditions is not sufficient to establish necessary and compelling reasons to quit employment. *See, e.g., Kellenbenz v. Unemployment Compensation Board of Review,* 71 Pa. Commw. 468, 454 A.2d 1202 (1982); *DeNofa v. Unemployment Compensation Board of Review,* 51 Pa.Commw. 97, 413 A.2d 786 (1980); *See also, Helsel, supra.* However, employees are permitted to collect unemployment benefits after they have voluntarily ceased employment on the grounds that the wages or working conditions have *substantially* changed, to the point that voluntary termination is necessary. *See, e.g., National Freight, Inc. v. Unemployment Compensation Board of Review,* 34 Pa.Commw. 161, 382 A.2d 1288 (1978). Therefore, the case law seems clear that,

[w]hen ... the pressure of real not imaginary, substantial not trifling, reasonable not whimsical, circumstances compel the decision to leave employment, the decision is voluntary in the sense that the worker has willed it but involuntary because outward pressures have compelled it.

*Taylor v. Unemployment Compensation Board of Review,* 474 Pa. 351, 378 A.2d 829 (1977).

In the instant case, the employees were merely protesting a possible change in the amount of pay they would receive under the former piece-work rate. This cannot be considered a "necessary or compelling" reason because the effect is only speculative. As the Commonwealth Court's opinion states, "[c]laimant's crucial mistake was in not giving the new arrangement a chance." *Monaco v. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review,* No. 2794 C.D.1982, slip op. at 3

(Commonwealth Court of Pennsylvania, December 6, 1984). If the appellants had continued to work and had actually suffered a substantial change in the amount of pay they received, their actions would have been justified and, if the manager continued to provide only lip service as relief, their exiting the premises to seek union aid may also have been justified. Instead, these employees took it upon themselves to seek union support prior to any change in pay and in so doing left the premises of their employer when it was clear that the manager was going to interpret those actions as a resignation.

The order of the Commonwealth Court is affirmed.

LARSEN, J., files a dissenting opinion in which PAPADAKOS, J., joins.

LARSEN, Justice, dissenting.

I dissent. The issue presented for our consideration in this case is whether appellants, Lea Monaco and Alba Caruso, had a conscious intention of quitting their jobs when, after a heated dispute with their manager, which dispute was conducted in broken English and concerned significant changes in their wages, they left their place of employment to consult briefly with union representatives, fully intending to return to their jobs once they had been assured that they would be able to produce an adequate income under the altered pay structure.

It has long been the law of this Commonwealth that "a finding of voluntary termination is essentially precluded unless the claimant had a conscious intention to leave his employment". *Roberts v. Unemployment Compensation Board of Review*, 61 Pa.Commw. 21, ——, 432 A.2d 646, 648 (1981). Moreover, an employee's act of resigning, leaving, or quitting employment does not amount to "voluntarily leaving work" under section 802(b) of the Unemployment Compensation Act, 43 P.S. § 802(b), unless he or she does so "without action by the employer". *Department of Labor and Industry v. Unemployment Compensation Board*

*of Review,* 133 Pa.Super. 518, 521–24, 3 A.2d 211, 214 (1939) (per curiam).

In the case sub judice, the employer precipitated the crisis facing appellants by abruptly changing back to a piece-work rate after a trial period at minimum wage that was set in place to assure adequate income while appellants learned to use new machinery on their jobs. Appellants' manager told appellants that any shortages in income would be worked out with the union, and appellants, evidently not satisfied with this explanation, told their manager that they wished to consult with union representatives before subjecting themselves to earnings at the piece-work rate. This was not an unreasonable request, but appellants' manager refused to let them leave and gave them an ultimatum, i.e., "as soon as you walk out from that door, out of my place, you quit the job."

The majority of this Court is of the opinion that the employer gave appellants a reasonable alternative to the termination in that "[t]hey could have remained on the premises for the completion of the day and taken up a complaint at the union headquarters at a later time." Maj. op. at 130. This, of course, is a mischaracterization, because there was no offer made by the employer for appellants to consult with their union representatives at a later time.[1] It is *not* unreasonable for employees to seek counsel from union representatives when work changes have been presented on the job by the employer. In the same way, it is not unreasonable for a shop boss to consult with his or her supervisor when a dispute arises between the shop boss and a subordinate employee.

My brethren have lost sight of the fact, in this case, that a person working at the minimum wage is already earning income that is below the official poverty line. To give appellants the "opportunity" to earn even less income than

1. Additionally, as Judge Colins points out in his dissenting memorandum opinion, the communication channels were not the best, because the heated dialogue between the parties was conducted in broken English.

minimum wage is not a "reasonable alternative". To hold otherwise smacks of gross insensitivity to the concerns of those who labor most arduously for the least remuneration in this society, and does not fulfill the mandated humanitarian objectives of the Unemployment Compensation Act.

Accordingly, I would reverse the order of Commonwealth Court which affirmed the order of the Unemployment Compensation Board of Review.

PAPADAKOS, J., joins in this dissenting opinion.