# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Uniontown Medical                              :
Rehabilitation, P.C.,                          :
              Petitioner                 :
                                               :   No. 1738 C.D. 2015
              v.                         :
                                               :   Submitted: February 19, 2016
Unemployment Compensation                      :
Board of Review,                               :
              Respondent                 :


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge


*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                            FILED: July 29, 2016

        Uniontown Medical Rehabilitation, P.C. (Employer) petitions for review of the August 18, 2015 order of the Unemployment Compensation Board of Review (Board), which affirmed a referee's decision that Jamie L. Ranaldi (Claimant) was not ineligible for benefits under section 402(b) of the Unemployment Compensation Law (Law).[1]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(b). In relevant part, section 402(b) provides that an employee who voluntarily leaves work without cause of a necessitous and compelling nature is ineligible for compensation.

Employer's business included performing medical case reviews for employers in workers' compensation matters.[2] Claimant began working for Employer in 2007 as an office manager/utilization review (UR) coordinator/medical file reviewer at a rate of pay of $18.00 per hour and regularly worked in excess of forty hours per week. Claimant's job duties included reviewing medical files and providing a summary so that Employer could issue a decision in regard to the necessity of continued medical treatment for injured workers. As Employer's work load increased, Claimant requested that Employer hire additional staff. On April 13, 2015, Dr. Kaplan advised Claimant that he needed her to prepare files for a client and to work overtime to complete this task. However, Claimant advised Dr. Kaplan that she had scheduled a family outing with her children and was unable to work overtime that evening. (Referee's Findings of Fact Nos. 1-5.)

Dr. Kaplan became upset with Claimant because he felt that she was not being a team player and did not care whether the work was getting done. Dr. Kaplan informed Claimant that the work must be done and that if she could not do it, then her hours would be cut to part-time in order to pay a new employee to do the work. Claimant objected to the threat of a reduction of her hours, to which Dr. Kaplan responded that her earnings were much better that what others received in the Uniontown area. Based upon her conversation with Dr. Kaplan and his threats to cut her hours and wages, Claimant tendered her resignation that same day. (Referee's Findings of Fact Nos. 6-10.)

Claimant applied for unemployment compensation, and on April 30, 2015, the local job center determined that Claimant was ineligible for benefits under

---

[2] The record indicates that Richard Kaplan, M.D., was the sole shareholder of Employer and that while Claimant has an LPN degree, she is not licensed as an LPN.

2

section 402(b) of the Law. Claimant appealed, and the matter was assigned to a referee. The referee conducted a hearing on May 27, 2015.

At this hearing, Claimant testified that she sent Dr. Kaplan an email on April 13, 2015, stating that she was experiencing back problems and needed to see a chiropractor, that she received a response from Dr. Kaplan indicating that was fine and detailing the work she needed to complete that day. Claimant stated that some of this work was moved from a different day on the schedule, which resulted in an overload of work that day. Claimant said that Dr. Kaplan questioned if she would be working late to finish this work. Claimant noted that Dr. Kaplan had asked her to prepare a medical history in a case involving more than 2,000 pages of medical history, which she described as nearly impossible to complete in an eight-hour day. She responded to Dr. Kaplan that she could not complete the work that night because of a family commitment, but he was adamant that the work be done. (Reproduced Record (R.R.) at 27a-28a.)

Claimant testified that Dr. Kaplan advised her that if she could not work overtime to complete the assignment, he could no longer guarantee her full-time work. Claimant stated that she always worked overtime and normally had no problem doing so, but that she could not on that particular day. Claimant indicated that she had been trying for months to get Dr. Kaplan to hire more help, but he refused. After completing her normal work day on April 13, 2015, and speaking with her husband, Claimant stated that she informed Dr. Kaplan of her decision to resign. Claimant explained her reason for resigning as Dr. Kaplan's refusal to hire more help despite an overload of work for Employer, and herself in particular. Claimant noted that Dr. Kaplan's wife called her the next day and asked her to come back to work, with less responsibilities but also at a reduced rate of pay. (R.R. at 28a-30a.)

3

On cross-examination, Claimant acknowledged that Dr. Kaplan informed her from the beginning that he needed her skill set more than forty hours per week and that she had worked overtime throughout the course of her employment. Claimant later admitted that she considered overtime to be part of her job. As to her workload on April 13, 2015, Claimant reiterated that it would have been impossible to complete all of the work assigned to her that day, even if she worked for twelve hours. Claimant testified that Dr. Kaplan advised her on that day that if she could not work more than forty hours per week, he would have to hire a second person with whom she would have to share hours. (R.R. at 33a-35a.)

Dr. Kaplan testified that part of his business includes utilization reviews that are randomly assigned by the Bureau of Workers' Compensation, thereby resulting in a fluctuating caseload. Dr. Kaplan stated that overtime was a requirement for Claimant as his UR coordinator.[3] He identified the three positions held by Claimant, namely office manager, UR coordinator, and medical file reviewer. He explained that the medical file reviewer position was not part of the UR process, that Claimant was required to review and summarize medical records for outside clients, and that the caseload fluctuated substantially. Dr. Kaplan noted that the deadline for these reviews was set by the client and sometimes changed. (R.R. at 39a-41a.)

As to staffing, Dr. Kaplan noted that prior to her resignation, Claimant was the only nurse on staff, along with five full-time and one part-time clerical employees, a bookkeeper, a medical transcriptionist, and a second UR coordinator.

[3] During this line of questioning, the referee interjected that he understood Claimant's reasons for leaving as being due to lack of staff, not overtime, and he advised Employer's counsel to direct his questions to the staffing issue. *See* R.R. at 39a-40a. The referee also advised Employer's counsel that any exhibits he had relating to the amount of overtime that Claimant worked would not be relevant. *See* R.R. at 40a.

He noted that his wife, with Claimant's help and for which Claimant was separately compensated, had obtained approval for a second review organization in March of 2015 and that he anticipated hiring more staff as the workload increased. With respect to situation on April 13, 2015, Dr. Kaplan testified that he believed Claimant was upset with the amount of overtime she was working and that he offered her three or four options, including hiring more skilled staff, but informed Claimant that the necessary hours would be shared between Claimant and any new staff. He stated that Claimant did not want to lose her overtime hours, but acknowledged she could not handle all of these hours by herself. (R.R. at 42a-47a.)

Upon further questioning by the referee, Claimant reiterated that she did not resign because of having to work overtime; rather "[t]here just wasn't enough staff. It became too stressful. It was too much work for a few people." (R.R. at 50a.) Claimant testified that Dr. Kaplan told her he could not guarantee her full-time work if she would not work overtime. *Id.* Claimant stressed that she never said she would not work overtime and decided to quit after the threat of being moved to part-time. *Id.* On further cross-examination, Claimant acknowledged that Dr. Kaplan provided her with options for continued employment. However, Claimant stated that said options included a $3.00 per hour reduction in pay "for no apparent reason." (R.R. at 51a.) Finally, Claimant noted that she would not have been able to complete the April 13, 2015 assignment, consisting of 2,000 pages of medical history, even if she worked on it from "6:00 in the morning . . . until 10:00 at night." (R.R. at 52a.)

By decision and order dated June 12, 2015, the referee reversed the determination of the local job center that Claimant was ineligible for benefits under section 402(b) of the Law. The referee concluded that Employer's "constant threatening to cut the claimant's hours to part time if she did not work all of the

5

employers [sic] needed overtime to get the 'job done' is an extreme unilateral change in working conditions which would make a reasonable person leave the employment." (Referee's decision at 2.) Employer appealed to the Board. The Board affirmed, adopting and incorporating the referee's findings and conclusions.

On appeal to this Court,[4] Employer argues that the Board erred as a matter of law in concluding that it unilaterally changed Claimant's working conditions such that Claimant had a necessitous and compelling reason to leave her employment. We disagree.

In order to be entitled to unemployment benefits, an employee who voluntarily terminates her employment bears the burden of proving that she had cause of a necessitous and compelling nature. *Renda v. Unemployment Compensation Board of Review*, 837 A.2d 685, 692 (Pa. Cmwlth. 2003). Necessitous and compelling cause occurs when there is real and substantial pressure to terminate one's employment that would compel a reasonable person to do so under similar circumstances. *Id.* at 691-92. Generally, a claimant must show that she acted with ordinary common sense in quitting, made a reasonable effort to preserve her employment, and had no real choice but to leave her employment. *Cowls v. Unemployment Compensation Board of Review*, 427 A.2d 722, 723 (Pa. Cmwlth. 1981); *see also Gioia v. Unemployment Compensation Board of Review*, 661 A.2d 34, 37 (Pa. Cmwlth. 1995) (noting that the claimant refused to attend a second meeting the employer offered to set up). Whether a claimant has necessitous and

---

[4] Our scope of review in an unemployment compensation appeal is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa.C.S. §704; *Leace v. Unemployment Compensation Board of Review*, 92 A.3d 1272, 1274 n.2 (Pa. Cmwlth. 2014).

6

compelling cause to quit is a question of law subject to appellate review. *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 832 (Pa. 1977).

A substantial unilateral change in job duties that renders a job unsuitable may give rise to a necessitous and compelling reason to quit. *Accu-Weather, Inc. v. Unemployment Compensation Board of Review*, 634 A.2d 818, 820 (Pa. Cmwlth. 1993). However, this only occurs if the job modification is unreasonable. *Id.* Employers are entitled to modify the employment specifications with regard to time, place and manner of employment, i.e., tasks assigned to an employee, so long as the employer acts reasonably and in good faith. *Monaco v. Unemployment Compensation Board of Review*, 565 A.2d 127, 129 (Pa. 1989); *see also Mosebauer v. Unemployment Compensation Board of Review*, 433 A.2d 599, 600 (Pa. Cmwlth. 1981). An employee's mere dissatisfaction with a change in job duties does not constitute a necessitous and compelling reason to quit. *Monaco*, 565 A.2d at 130. Rather, working conditions must substantially change, to the point that voluntary termination is necessary, in order for a claimant to have necessitous and compelling reason to quit. *Id.*

In the present case, the Board adopted the findings and conclusions of the referee. The referee concluded that Employer's "constant threatening to cut the claimant's hours to part time" constituted "an extreme unilateral change in working conditions which would make a reasonable person leave the employment." (Referee's decision at 2.) We agree.

The parties do not dispute that Claimant regularly worked overtime during the course of her employment with Employer. Upon learning that Employer needed her to work overtime on April 13, 2015, Claimant responded that she could not work overtime that evening due to a previously scheduled family outing.

7

Employer advised Claimant that if she could not work the overtime as required, he would have to hire another person who would ultimately share Claimant's responsibilities and hours, thereby reducing her hours to part-time. Dr. Kaplan repeated this explanation over the course of his conversations with Claimant regarding overtime work on April 13, 2015. However, Claimant testified that even if she did work overtime on April 13, 2015, she would not have been able to complete Employer's assignment, which required review of 2,000 pages of medical history. The Board credited Claimant's testimony in this regard.

Essentially, Claimant was given the choice between complying with an unreasonable directive, and foregoing her family commitment, to attempt to complete an impossible task, or face a reduction in hours and rate of pay. The latter would certainly constitute a unilateral change in the terms and conditions of Claimant's employment, and one that would have been unreasonable given Claimant's prior work history and the impracticability of Dr. Kaplan's demand. Claimant simply had no other alternative than to quit her employment at that point in time.

Because Dr. Kaplan's demand placed a real and substantial pressure on Claimant to terminate her employment and she had no real choice but to resign, the Board did not err in concluding that Claimant met her burden of establishing cause of a necessitous and compelling nature such that she was not ineligible for benefits under section 402(b) of the Law.

Accordingly, the order of the Board is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Uniontown Medical            :
Rehabilitation, P.C.,            :
           Petitioner      :
           :    No. 1738 C.D. 2015
     v.             :
           :
Unemployment Compensation    :
Board of Review,          :
           Respondent    :

## ***ORDER***

AND NOW, this 29th day of July, 2016, the order of the Unemployment Compensation Board of Review, dated August 18, 2015, is hereby affirmed.

_____

PATRICIA A. McCULLOUGH, Judge