## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gerald M. Comedy,            :
           Petitioner      :
           :
      v.            :
           :
Unemployment Compensation    :
Board of Review,            :    No. 293 C.D. 2017
           Respondent    :    Submitted: August 11, 2017

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                       FILED: November 20, 2017

Gerald M. Comedy (Claimant) petitions this Court, pro se, for review of the Unemployment Compensation (UC) Board of Review's (UCBR) January 31, 2017 order affirming the Referee's decision denying Claimant UC benefits under Section 402(e) of the UC Law (Law).[1] The sole issue before this Court is whether the UCBR erred by concluding that Claimant committed willful misconduct. After review, we affirm.

Claimant was employed by AAA East Central (Employer) as a full-time branch specialist beginning October 13, 2014. On April 19, 2016, Claimant was injured in a car accident, during non-work hours. Claimant was unable to report to work, and was approved for leave beginning April 20, 2016, under the Family and

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (referring to willful misconduct).

Medical Leave Act (FMLA),[2] that was to expire on July 5, 2016. On July 5, 2016, Claimant had a doctor's appointment, during which the doctor refused to release him to return to work. Claimant text messaged his supervisor on July 6, 2016, that he was still not released to return to work and would be providing additional medical documentation from his doctor. On July 6, 2016, Employer's human resources (HR) generalist Carrie Rodgers (Rodgers) attempted to contact Claimant by phone, but received no answer. Rodgers left a message requesting Claimant to return her call. Claimant did not return her call. On July 18, 2016, Employer sent Claimant a letter advising Claimant that his employment was terminated for failing to provide medical documentation to support an extension of his FMLA leave beyond July 5, 2016. On July 22, 2016, Employer received medical documentation concerning Claimant's need to remain off work until his next doctor's appointment on August 9, 2016.[3]

On September 25, 2016, Claimant applied for UC benefits. On October 14, 2016, the Erie UC Service Center found Claimant ineligible for UC benefits under Section 401(d)(1) of the Law,[4] and eligible under Section 402(e) of the Law. Claimant appealed, and a Referee hearing was held. On November 21, 2016, the Referee affirmed in part and reversed in part the UC Service Center's determination, and found Claimant ineligible under both Sections of the Law. Claimant appealed to the UCBR.

---

[2] 29 U.S.C. §§ 2601-2654.

[3] Claimant was seen by his doctor on or about August 9, 2016, and was not released to return to work. Claimant obtained documentation from his doctor dated October 14, 2016 which reflected that Claimant was in some capacity employable, and not permanently disabled.

[4] 43 P.S. § 801(d)(1) (referring to ability and availability for suitable work).

On January 31, 2017, the UCBR affirmed the Referee's decision.[5] Claimant appealed to this Court.[6]

In the "SUMMARY OF THE ARGUMENT" section of his brief filed with this Court, Claimant asserts that he "did not willfully fail to perform work duties or make himself unavailable for work." Claimant Br. at 7. However, in the "ARGUMENT" section of his brief, Claimant argues he had a necessitous reason to leave employment and, alternatively, if he was discharged for failing to follow Employer's directive, "both the reasonableness of the employer's demand and the reasonableness of the employee's refusal must be examined before a finding of willful misconduct can be made." *Id.* at 9. Claimant concludes by declaring "there is insufficient evidence of record to indicate that he was discharged due to willful misconduct connected with his work. [Claimant] was also available for suitable work, but not in July of 2016."[7] *Id.* at 9-10.

Initially,

> Section 402(e) of the Law provides that an employee is ineligible for [UC] benefits when his unemployment is due to discharge from work for willful misconduct connected to his work. The employer bears the burden of proving willful misconduct in a[] [UC] case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

---

[5] The Referee's order inadvertently reflected that Claimant was ineligible under Section 402(b) of the Law, rather than Section 402(e) of the Law. However, the UCBR's order amended the Referee's order accordingly.

[6] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

[7] Claimant's Petition for Review and Statement of Questions do not reference his availability for work.

*Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 747 n.4 (Pa. Cmwlth. 2000) (citation omitted). "When an employee is discharged for violating a work rule, the employer must prove the existence of the rule and the fact of its violation." *Lewis v. Unemployment Comp. Bd. of Review*, 42 A.3d 375, 377 (Pa. Cmwlth. 2012). "Once the employer has met its initial burden, the burden then shifts to the claimant to show either that the rule is unreasonable or that claimant had good cause for violating the rule." *Cnty. of Luzerne v. Unemployment Comp. Bd. of Review*, 611 A.2d 1335, 1338 (Pa. Cmwlth. 1992).

Here, it is undisputed that Claimant was approved for FMLA leave on May 20, 2016. The FMLA "DESIGNATION NOTICE" specifically provided a "Begin Date" of "**04/20/2016**," an "End Date" of "**07/05/2016**," and an "Expected Return Date" of "**07/06/2016**." Certified Record Item 9 at Ex. E-1 (emphasis in original). Further, Employer's FMLA "EMPLOYEE RIGHTS & RESPONSIBILITIES" policy provides, in relevant part, that employees

> have the following **RESPONSIBILITIES** while on FMLA leave:
>
> . . . .
>
> **Call-in Procedures** You must follow department call-in procedures for unforeseeable or intermittent absences that may be FMLA-qualifying. **While on leave you will be required to notify your supervisor of your status on a regular basis (at least once every 2 weeks) and intent to return to work.**
>
> **Return to Work** If the leave is due to your own serious health condition, you are required to provide a fitness-for-duty certificate indicating that you are able to perform the functions of your job before you return to work. If not received in a timely manner, your return to work may be delayed until certification is provided. **If you fail to return**

4

> **within three (3) work days after an approved leave, you
> will be considered to have resigned.**[8]

*Id.* at Ex. E-4 (emphasis added).

Claimant testified that he informed his supervisor on July 6, 2016 that he was not released to return to work, and the doctor was "filling out the paperwork and faxing it to HR." *Id.* Notes of Testimony November 9, 2016 (N.T.) at 8. However, Rodgers testified that notwithstanding Claimant's text message to his supervisor, Claimant knew that medical documentation was required to maintain his FMLA leave. *Id.* N.T. at 19. Claimant's FMLA ended on July 5, 2016 and his medical documentation to extend his FMLA was not provided to Employer until July 22, 2016.

On cross-examination, Claimant testified:

ET [Employer's Representative] And then you would agree under the FMLA Rights and Responsibilities, it was your responsibility to maintain that contact at least once every two weeks with your Employer to see – to let them know what

---

[8] The fact that this policy references resignation as opposed to termination is of no consequence and is consistent with this Court's previous holdings that violation of an employer's policy referencing resignation may constitute willful misconduct. *See Perez v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth. No. 2218 C.D. 2014, filed July 22, 2015); *Cummings v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth. No. 807 CD 2012, filed October 15, 2012); *Washington v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth. No. 541 C.D. 2010, filed October 29, 2010). We acknowledge that this Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414 of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414.

The Concurrence states that we have a "dilemma" in this area and "the law is not clear." Concurring Op. at 3. Any confusion is the result of employers and employees not understanding the legal significance of an employment termination versus an employment resignation, and therefore they use the terms interchangeably to communicate an employment separation. As the Concurrence points out, the primary impact of the distinction is which party has the burden of proof. In the case at bar, Employer designated the employment separation as an employment termination when in fact it could have designated the employment separation as an employment resignation. Simply because Employer has the burden of proof when it otherwise may not have had the burden does not in any manner change the end result, i.e., an employment separation wherein the issue is whether the claimant is eligible for UC benefits.

was going on, to check the status of paperwork and such, correct?

C[laimant] I put everything in my doctor's hands and my doctor was supposed to submit that . . . [.]

*Id.* N.T. at 15. "Claimant lays the blame on the doctor arguing that it was he who turned the documentation in late. We do not agree. Claimant was responsible to turn in the documentation." *Owens v. Unemployment Comp. Bd. of Review,* 748 A.2d 794, 798-99 (Pa. Cmwlth. 2000). We recognize that this Court has held that where "[the c]laimant reasonably believed [he was] protected under the FMLA, [the e]mployer has not demonstrated a conscious wrongdoing on the part of [the c]laimant." *Eshbach v. Unemployment Comp. Bd. of Review,* 855 A.2d 943, 950 (Pa. Cmwlth. 2004). However, here, Claimant was aware his FMLA leave expired on July 5, 2016, and he was due to return to work on July 6, 2016. Further, the FMLA Employee Rights and Responsibilities mandated that he call in at least once every two weeks to confirm his status, and if he failed to return to work three days after his approved leave ended, he would be considered to have resigned. Moreover, Claimant's supervisor told him on July 6, 2016, that he had to submit the documentation in order to remain on leave.

Employer had a right to expect Claimant to ensure that his doctor's documentation was, in fact, timely provided to Employer and that Claimant maintain communication with Employer in accordance with Employer's policy. Rather, Claimant waited until he received Employer's July 18, 2016 termination letter, two weeks after his FMLA leave had expired on July 5, 2016, to confer with his doctor about sending his Employer his medical documentation. Under such circumstances, the UCBR properly concluded that Claimant committed willful misconduct.[9]

---

[9] The Concurrence states: "I cannot glean from the record where the requirement for Claimant to obtain more medical documentation originates, if not from Claimant himself." Concurring Op. at 6. The Concurrence concludes: "I would hold that Claimant's failure to provide additional medical information did not constitute willful misconduct for violation of a policy, but his failure to contact

Notwithstanding the above, the UCBR also concluded that Claimant was ineligible for UC benefits under Section 401(d)(1) of the Law.

> Claimant has failed to raise [the issue of whether he is eligible for UC benefits under Section 401(d)(1) of the Law] anywhere within his Statement of the Questions Presented [or in his Petition for Review], and for that reason, it is waived. Pa.R.A.P. 2116; *South Hills Health Sys*[.] *v. Workers' Comp*[.] *Appeal* [*Bd.*] *(Kiefer),* 806 A.2d 962 (Pa. Cmwlth. 2002) (issues not raised in [the] Statement of Questions Presented, or in [the] Petition for Review, are waived on appeal). Further, and most puzzlingly, despite repeating the phrase '[(un)]available for work' [in both] the [Summary of Argument and] Argument section[s] of his brief, Claimant has failed to advance or develop any actual legal argument thereon.

*Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works),* 862 A.2d 137, 141 (Pa. Cmwlth. 2004).

For all of the above reasons, the UCBR's order is affirmed.

_____
ANNE E. COVEY, Judge

---

Employer did." *Id.* However, Claimant's absence from work was for an approved FMLA leave which was due to end on July 5, 2016. Without additional medical documentation evidencing the medical necessity that the FMLA leave be continued, the FMLA leave automatically expired and Claimant's absence from work became unauthorized. Pursuant to Employer's policy, if an employee fails to return to work within three days after an approved FMLA leave, he is deemed to have resigned. Claimant argued that he did not commit willful misconduct because his doctor was to submit to Employer additional medical documentation to support the continuation of his FMLA leave. Nevertheless, it was Claimant's obligation, not the doctor's duty, to ensure Employer received the required medical information before the expiration of his FMLA leave. Because Claimant did not submit additional medical documentation or ensure that his doctor furnished the necessary information, Claimant's FMLA leave ended and his leave of absence from work was no longer authorized. Thus, three days after the end of Claimant's FMLA leave, Claimant, pursuant to the policy, was deemed to have separated from his employment with Employer. Since Claimant did not comply with Employer's policy, thereby making Claimant's absence from work unauthorized, Claimant's violation of the policy constituted willful misconduct.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gerald M. Comedy,                                     :
                            Petitioner               :
                                                     :
            v.                                        :
                                                     :
Unemployment Compensation                            :
Board of Review,                                     :        No. 293 C.D. 2017
                            Respondent               :

## O R D E R

AND NOW, this 20th day of November, 2017, the Unemployment Compensation Board of Review's January 31, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gerald M. Comedy, : 
                  Petitioner : 
                         : 
       v. :  No. 293 C.D. 2017
                         :  Submitted: August 11, 2017
Unemployment Compensation : 
Board of Review, : 
                Respondent : 

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge

*OPINION NOT REPORTED*

**CONCURRING OPINION**
**BY JUDGE BROBSON**                     **FILED: November 20, 2017**

I agree with the majority's opinion in result. I write separately to point out the pervasive confusion in our case law relating to the question of whether an individual's employment ends by an employee voluntarily quitting or by a discharge for violation of a policy (usually an attendance policy), thus potentially constituting willful misconduct, where the policy itself provides that an employer will view noncompliance as a voluntary quit. I believe such confusion requires this Court to clarify its position on these types of policies.

Typically, this issue arises in an unemployment compensation benefits case where an employee fails to adhere to attendance or no call/no show policy. The policy will state something analogous to the following: "If an employee fails to show for his or her work duties for two consecutive days, without notifying the employer, the employer will consider the employee to have quit his or her position." *See Segear v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth.,

No. 605 C.D. 2016, filed March 24, 2017), slip op. at 2 (concerning policy that views noncompliant employees as "self-terminated"); *Perez v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 2218 C.D. 2014, filed July 22, 2015), slip op. at 5 (concerning policy that views noncompliance as "voluntary resignation"); *Cummings v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 807 C.D. 2012, filed October 15, 2012), slip op. at 2 (concerning policy that noncompliant employee "will be deemed to have resigned"); *Washington v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 541 C.D. 2010, filed October 29, 2010), slip op. at 9 (concerning policy that views noncompliance as "voluntary resignation of employment"). Similarly, in the instant case, AAA East Central's (Employer) policy required Gerald Comedy (Claimant) to make bi-weekly contact and return to work within three days of the approved leave, otherwise, he would "be considered to have resigned." (Certified Record (C.R.) Item No. 9 at Ex. E-4.) In all of these cases, the policy provides that an employer will view noncompliance as the employee having voluntarily quit his or her position. Regardless, in these instances, our Court concluded that the employer actually terminated the claimant's employment for willful misconduct.

I find our previous decisions troubling given the problems that emerge in cases involving these types of policies. Frequently, an employee will not communicate with the employer within the window of the no call/no show policy. As a result, the employer and the employee will have differing understandings of how the employment ended. Adding to the confusion, sometimes employers will seem to act in conflict with their own policy. For example, in the instant case, as in *Segear*, despite the employer's policy appearing to provide that noncompliance results in a *voluntary quit*—at least, in the eyes of the employers—the employers

nonetheless wrote to their former employees, indicating that they had been *discharged*. This initial confusion then has a sort of domino effect, where the service centers, referees, and the Unemployment Compensation Board of Review (Board) also wrestle with the question of whether the employment ended by way of a voluntary quit or termination for willful misconduct, often analyzing a case under one and then, alternatively, under the other. Seemingly, if our case law indicates nothing else, it demonstrates that this dilemma is recurring and the law is not clear.

I recognize that the lack of clarity is due, at least in part, to some countervailing interests. On the one hand, holding that the language of the policy itself dictates the legal conclusion—in the contest of voluntary quit versus willful misconduct—effectively enables employers to shift the burden of proof to the employee.[1] Allowing employers to do so subverts the authority of the neutral decisionmaker at every level from the service centers to the Pennsylvania Supreme Court. On the other hand, it seems counterintuitive to determine that an employee was fired for failure to adhere to a policy, where a policy indicates that the employee will be considered to have quit, rather than been fired for not attending work. Moreover, placing the onus on the employee may be warranted in such a scenario,

---

[1] If the employee voluntarily quits, the burden is on the employee to prove that he or she quit for a necessitous and compelling reason. *Fitzgerald v. Unemployment Comp. Bd. of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999). Conversely, if the employer discharged the employee, the employer must first prove that it did so for, in this case, willful misconduct. *Guthrie v. Unemployment Comp. Bd. of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). In his brief, Claimant seems to suggest that he voluntarily quit. Also curiously, the Employer, by sending Claimant a termination letter, seems to believe that it terminated Claimant. As such, both parties have placed the burden of proof on themselves. I recognize that there may be reasons outside of unemployment compensation benefits—such as severance packages, workers compensation benefits, or company-specific, post-employment policies (like providing letters of recommendation)—that an employer would elect to characterize the end of employment as a discharge rather than a voluntary quit. It is not clear, however, why Employer did so in this case.

as it is the employee who makes the decision to end the employment by not showing up for work and not notifying the employer. These no call/no show policies appear to be common sense policies, reduced to writing, which essentially provide that if an employee stops coming to work, the employer is free to assume the employee quit and find a replacement. In other words, rather than dictating a burden, these policies can be viewed as stating, "If you abandon your position, we will view that as you having voluntarily quit your position." Even if an employer's policy says as much, the factfinder still must determine that the employee opted to leave the employment. As Claimant correctly points out, in the absence of a no call/no show policy, this Court has held previously that ceasing to show up for work and failing to communicate with the employer is a voluntary quit by the employee, if the employee intended to abandon the position. *See*, *e.g.*, *Unemployment Comp. Bd. of Review v. Metzger*, 368 A.2d 1384 (Pa. Cmwlth. 1977) (holding continued absence and failure to notify employer about return was a voluntary quit); *but see Firmstone v. Unemployment Comp. Bd. of Review*, 370 A.2d 749 (Pa. Cmwlth. 1977) (holding employee did not have conscientious intent to abandon position where he failed to report for work, without notification to his employer, on two consecutive work days after leaving the work site due to a death in his family).

Nevertheless, the majority is correct that historically, when there is a no call/no show policy in place, this Court has determined that a violation of the policy constitutes willful misconduct, even where the policy itself provides that noncompliance results in a voluntary quit. *Segear*, *Perez*, *Cummings*, and *Washington* were all unreported decisions. I acknowledge the case law that the majority cites is analogous, but I remain troubled by the lack of clarity in this area. Though these unreported cases demonstrate a consistent trend by this Court, they are

persuasive, rather than binding. Commonwealth Court IOP § 414(a), 210 Pa. Code § 69.414(a). Clearly, this remains a disputed area of Pennsylvania unemployment compensation law and causes confusion in the proceedings below. If we are to determine that noncompliance with these types of policies constitutes willful misconduct, we should state as much clearly and in a reported decision so that service centers, referees, and the Board can proceed with confidence when next this question arises.

Finally, it appears that Claimant was fired for failure to follow a policy, but not exactly how the majority describes. Read as a whole, the Referee's decision appears to state that Employer discharged Claimant both for failure to contact Employer[2] and for failure to provide additional medical documentation. Though the failure to contact pertains to Employer's policy regarding FMLA leaves of absence, the failure to provide medical documentation does not. The policy only requires that an employee both show up for work within three days of the end of the leave and maintain bi-weekly contact with Employer. Carrie Rodgers testified that she left Claimant a voicemail requesting that Claimant call her back and that she "tried to contact him and tell him that we needed additional information if he needed to be off longer." (C.R., Item No. 9 at 6.) She may very well have intended to instruct Claimant to acquire more medical documentation, but she never actually did. It appears from a review of the record that Claimant stated that he would acquire

---

[2] The Referee curiously emphasizes Claimant's need to have contacted Employer on July 5, 2016. This seems to relate to the need to contact Employer every two weeks, but the Referee's decision is not clear on that point.

more medical documentation entirely on his own volition.[3]  It is possible that Employer instructed Claimant to acquire additional medical information, and failure to comply with an instruction can also constitute willful misconduct, but I cannot glean from the record where the requirement for Claimant to obtain more medical documentation originates, if not from Claimant himself.  There is nothing in the policy itself that requires additional medical documentation for extensions of leaves of absences.  In fact, the very policy at issue requires Claimant to obtain fitness-for-duty clearance documentation from a doctor prior to his return to work.  In other words, the policy requires medical documentation to return to work, not to continue a leave of absence.  As Claimant's doctor did not clear him to return to work, by not returning to work Claimant adhered to the only part of the policy that pertains to medical documentation—*i.e.*, the fitness-for-duty clearance.

Accordingly, I would hold that Claimant's failure to provide additional medical information did not constitute willful misconduct for violation of a policy, but his failure to contact Employer did.

_____
P. KEVIN BROBSON, Judge

---

[3] The Referee asked Carrie Rodgers if Claimant was told that he needed to send in additional medical documentation and she responded, "Yes."  (C.R. Item No. 9, at 19.)  The Referee did not make a factual finding on that point and Carrie Rodgers does not elaborate on who gave Claimant that instruction, or when it may have occurred.  As an appellate court, we are not in a position to make that factual finding *sua sponte*.