Paul MATHIS, Petitioner

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 15, 2013.

Decided April 9, 2013.

Christine E. Reilly, Bensalem, for petitioner.

Judith M. Gilroy, Assistant Counsel, Harrisburg, for respondent.

Frederick T. Lachat, Jr., Philadelphia, for intervenor Christian Heating & Air Conditioning, Inc.

BEFORE: LEADBETTER, Judge, and SIMPSON, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

Paul Mathis (Claimant) petitions for review of the decision and order of the Unemployment Compensation Board of Review (Board), holding that he is ineligible for unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law (Law)[1] on the ground that he voluntarily quit his job without a necessitous and compelling reason. We affirm.

Claimant was employed from April 2010 until January 24, 2012 as a full-time sheet metal installer for Christian Heating & Air Conditioning, Inc. (Employer). The company has been owned, since 1989, by David Peppelman (Owner).[2] Claimant applied for benefits via internet on January 24, 2012, stating that his reason for leaving his

---

[1]. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, § 402, *as amended*, 43 P.S. § 802(b). Section 402(b) provides, in relevant part, that "[a]n employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature...." *Id.*

[2]. Employer's handbook, on page 5, entitled "Welcome," as well as its website, each state that the company was named "Christian" because:

"the company was dedicated to the Lord. After several years of the Lord providing for him, Dave wanted to give back to the Lord in some way. As an owner, he wanted to be able to help those who couldn't afford a system. As an employer, he wanted to be able to give someone a second chance with a career at this company. Therefore, this company is not only a business, it is a ministry. It is set on standards that are higher than Dave's own. His goal is to run this company in a way most pleasing to the Lord. This includes treating employees and customers as he would want to be treated."
(R. Item No. 3, Employer's Notice of Application w/Employer's Separation Information,

employment was "discrimination" and describing the incident of discrimination as a "violation of his religious freedom." (Record (R.) Item No. 2, Internet Initial Claims, dated 1/24/12, at 8A–9A.) Claimant also responded, in an answer to the claim form question "[w]ere you discharged or suspended?" that he had been "discharged," and added, as explanation:

I was fired due to a violation of my religious freedom. The owner of the company continuously attempted to push his religion on me and other employees, as well as wear a religious statement on our ID badges which I also felt was a violation of my religious freedom. I covered up the statement with tape and the owner told me *either I needed to wear it or he was quote in his words, "letting me go."*

(*Id.*, at 8A, 11A (emphasis added).)

The religious statement to which Claimant referred was Employer's mission statement, printed on one side of the employee identification badge all employees were required to wear at all times. (R. Item No. 9, Employer Exhibit E6, Installation Mechanics and Helpers Policy and Procedures, at 69A.) Claimant's identification badge bears his name, position, employee number, and photograph, together with Employer's name and logo; the reverse side of the badge sets forth Employer's mission statement, as follows:

This company is not only a business, it is a ministry. It is set on standards that are higher than man's own. Our goal is to run this company in a way most pleasing to the Lord. Treating employees and customers as we would want to be treated along with running a business as if we are all part of one big family is our plan.

(R. Item No. 3 at 22A.)

In oral interviews conducted by the Allentown UC Service Center (Service Center), Claimant and Employer offered different versions of the events that culminated in Claimant's separation from employment.[3]

By Notice of Determination mailed February 8, 2012, the Service Center stated that due to the conflict regarding the circumstances of Claimant's separation, it had considered his eligibility under both Sections 402(b) and 402(e)[4] of the Law, determined that Employer had initiated the separation, that Claimant had been discharged for "insubordination," that Claimant had established no good cause for his actions and that therefore, Claimant was ineligible for benefits pursuant to

---

at 20A; R. Item No. 9, Referee's Hearing: Employer Exhibit E–3, at 66A.)

3. The Service Center's oral interview of Employer was conducted with the Employer's administrator, Anita Peppelman, who appeared and testified at both hearings as a witness for Employer. In the oral interview she stated "[Claimant] decided to voluntarily quit—he did not want to wear the badge and said we could not force him to wear it. He did not voluntarily quit in lieu of discharge. We were going to give him a warning, but he decided to voluntarily quit instead … We have never pushed our religion on anyone and [Claimant] has not discussed any unwanted conversations with us." (R. Item No. 4,

Records of Oral Interview w/attachment, dated 2/7/2012, at 25A.) In his oral interview, Claimant stated "I have video evidence of the boss saying you're gone get out of here. The owner [sic] always down people's backs about going to church with him. Every morning he says something to me and I asked him to stop. I don't have specific dates." (R. Item No. 4 at 26A.)

4. Section 402(e) provides that an employee shall be ineligible for compensation for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work…." 43 P.S. § 802(e).

Section 402(e) of the Law. (R. Item No. 5, Notice of Determination, at 29A.)

Claimant filed an appeal, and following a hearing at which Owner and Employer's administrator, Anita Peppelman (Administrator), testified without counsel, and at which Claimant did not appear, the referee concluded that Claimant had voluntarily quit his job, and thus Section 402(b) was the appropriate section of the Law to consider. (R. Item No. 10, Referee's Decision/Order, dated 3/22/12, at 74A–76A.) The referee denied benefits, finding that Claimant failed to establish a necessitous and compelling reason for voluntarily leaving his employment, and reasoned that Claimant was aware of Employer's mission statement at the time he was hired, and complied with Employer's requirement that employees wear the ID badge. (*Id.*) The referee found that the ID badge is part of the required uniform for employees, that Employer does not require employees to agree with its mission, and that after Employer discovered, on Claimant's last day of work, that Claimant had used duct tape to cover the side of the badge where the mission statement was printed, Employer intended to provide Claimant a warning. (Referee's Decision/Order, Findings of Fact (F.F.) ¶¶ 4, 7–8, 11, at 74A.) The referee concluded that Claimant voluntarily left his employment after Employer informed him that he was required to wear the ID badge. (Referee's Decision/Order at 75A.)

Claimant appealed to the Board, and also requested a remand hearing, explaining the reasons for his failure to attend the referee hearing. On April 27, 2012, the Board directed the referee to schedule a remand hearing, which was held on June 12, 2012.[5] At the remand hearing, Claimant appeared with counsel, and both Owner and Administrator again appeared, also with counsel. On July 18, 2012, the Board issued its Decision and Order, concluding that Claimant was ineligible for benefits under Section 402(b) of the Law, noting that it considered the testimony offered at both hearings in reaching its decision. (R. Item No. 21, Board's Decision and Order, at 326A.) The Board made the following findings of fact.

1. For the purpose of this appeal, [C]laimant last worked for Christian Heating & Air Conditioning as a full time sheet metal installer from April 26, 2010 until January 23, 2012, his last day of work, with a final rate of pay of $25.00 per hour.

2. [E]mployer maintains a mission statement which includes a religious goal.

3. The employee identification badge contained the mission statement at the time that [Claimant] was hired.

4. [E]mployer does not require that employees share the owners' religious beliefs.

5. [C]laimant had not informed [E]mployer he had any issue with the [E]mployer's mission statement.

6. The mission statement is printed on the reverse of the employee's identification badge.

**5.** The Board directed the referee to hold the remand hearing for the purpose of receiving testimony and evidence on Claimant's reason for nonappearance at the previous hearing. The Board also specified that the parties could also provide new or additional testimony and evidence on the merits, and, if the Board found that Claimant did not have proper cause for his nonappearance, the additional testimony and evidence on the merits would not be considered by the Board. (R. Item No. 14, Board Hearing Order & Memo, at 114A.)

7. Employees are required to wear uniforms, including the badge, at all times.

8. On January 23, 2012, [E]mployer's owner learned the [C]laimant had covered the mission statement on his badge with duct tape.

9. [O]wner asked [C]laimant why he had done so.

10. [C]laimant informed [Employer] the statement was against his religious freedom.

11. [Owner] told [C]laimant to remove the duct tape or he could leave.

12. [C]laimant chose to leave and the work relationship ended.

(F.F. ¶¶ 1–12, at 325A–326A.)

The Board concluded that Claimant was aware at the time he was hired that he was required to wear the ID badge containing the mission statement as part of his uniform, and voiced no objection to it until his last day of work. The Board stated that Employer did not change the terms and conditions of Claimant's employment, nor did he require Claimant to do anything in violation of his religious beliefs. (Board's Decision and Order at 326A.) Claimant timely filed the instant petition for review appealing the Board's order to this Court.[6]

On appeal, Claimant argues that the Board erred in concluding that he is ineligible for benefits under Section 402(b) of the Law, because Claimant did not voluntarily resign but rather was terminated from his employment. As such, Claimant contends that his actions did not constitute willful misconduct under Section 402(e) of the Law because they were not intentional. (Claimant's Brief at 10–11.) Claimant also

contends that the Board's decision is not based on substantial evidence of record, arguing specifically that the Board's Findings of Fact 11 and 12 are directly contradicted by testimony from both Claimant and Employer during the remand hearing. (Claimant's Brief at 13–14.) Finally, Claimant states that even if he had voluntarily resigned his employment, he had necessitous and compelling reasons to do so, because Employer had created a hostile work environment designed to intentionally aggravate Claimant because of his religious beliefs. (Claimant's Brief at 16.)

We find, as an initial matter, that the Board did not err in its determination that Claimant voluntarily quit his employment. The threshold question of whether the facts surrounding his separation from employment constitute a voluntary resignation is a question of law for this Court to determine from the totality of the evidence presented in the record. *Iaconelli v. Unemployment Compensation Board of Review*, 892 A.2d 894, 896 (Pa.Cmwlth.2006). At the initial referee hearing, Owner testified that he questioned Claimant as to why he had placed duct tape over the mission statement, and told Claimant that he was required to wear the badge without the duct tape. (R. Item No. 9, Referee's Hearing: Transcript of Testimony (H.T.) at 54A.) Owner testified that he asked Claimant if he wanted to wear the ID badge, and told Claimant "if you don't wear it are you telling me that you want to leave? I said because that's part of your uniform and I said because you have to wear it. So he decided to quit." (*Id.*)

6. Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. 2 Pa.C.S. § 704; *Middletown Township v. Unemploy-* *ment Compensation Board of Review*, 40 A.3d 217, 223 n. 8 (Pa.Cmwlth.2012); *First Federal Savings Bank v. Unemployment Compensation Board of Review*, 957 A.2d 811, 814 n. 2 (Pa.Cmwlth.2008).

In his internet initial claim for benefits, filed the day after his separation from employment, Claimant stated that after he covered up the mission statement with duct tape, Owner told him "either I needed to wear it or he was quote in his words 'letting him go.'" (Record Item No. 2, Internet Initial Claims, at 11A.)

At the remand hearing, Claimant provided his account of what transpired on the day of his separation from employment. Claimant testified that Owner noticed the duct tape on Claimant's ID badge, and asked him to remove it; Claimant testified that he told Owner he did not agree with the mission statement, and stated that Owner then screamed at him from the loading dock and said "you're gone, get out of here." (R. Item No. 20, Remand Hearing: 6/12/2012 Transcript of Testimony (R.H.T.) at 297A.) However, at the remand hearing, Owner once again testified to a different version of the day's events, stating that he did not tell Claimant to get out, but rather offered him the option to either wear the badge as required, or make the choice to leave his employment:

Referee (R): You discovered [Claimant] with the tape [on] his badge, correct?

[Owner (O) ]: Yes.

R: On his last day of work?

[O]: Yes.

R: Did you tell him to get out?

[O]: No, I told him if he doesn't wear the badge, the way we present it you can't work and I said will you take it off and he said no. So, I said if you don't wear the badge the way I have it originally you can't work. I did say that.

(R.H.T. at 299A.)

Claimant wishes us to focus solely on one excerpt from Owner's testimony at the remand hearing, elicited as part of an exchange between Owner and Claimant's counsel, at a point where the referee interposed a series of leading questions to Owner:

Claimant's Counsel (CL); [Owner (O) ]; Referee (R)

CL: And you testified previously at the prior hearing that Claimant quit his employment, correct?

[O]: Yes.

CL: So it's your testimony that [Claimant] was not terminated for covering the backside of his ID badge, correct?

[O]: He refused to wear it.

CL: But he wasn't not terminated for covering the backside of the ID badge, correct?

[O]: He did not want to wear the badge, you're right.

CL: Okay. So . . .

[O]: He refused to wear it. If [he] doesn't wear it he doesn't work.

R: Okay. Let's try it this way. Did you terminate [Claimant] for covering up the back of his ID badge? Is that your question?

CL: Yes.

[O]: No, I terminated him . . .

R: Did you terminate—so your answer is?

[O]: For not wearing the badge the way that it should.

R: So you terminated him for not wearing the badge?

[O]: Yes, but that was before he taped it. You cannot tape up your badge.

(R.H.T. at 300A.)

On redirect examination, Employer's counsel asked Owner whether, if Claimant had removed the duct tape from the ID badge as he requested, Claimant would still remain employed, to which Owner replied, "yes." (R.H.T. at 301A.)

In determining whether a case is a voluntary quit, it is the claimant's burden to prove that his separation from employment is involuntary. *Helsel v. Unemployment Compensation Board of Review,* 54 Pa.Cmwlth. 320, 421 A.2d 496 (1980). For an employer's actions to constitute a discharge, a claimant must demonstrate that the actions had the immediacy and finality of a "firing," but the employer need not specifically use words such as "fired" or "discharged." *Wise v. Unemployment Compensation Board of Review,* 700 A.2d 1071 (Pa.Cmwlth.1997). The fact that Claimant testified that Owner told him "you're gone, get out of here" (H.T. at 54A) does not necessarily make the termination of employment involuntary, however. In *Monaco v. Unemployment Compensation Board of Review,* 523 Pa. 41, 565 A.2d 127 (1989), employees left their plant during work hours to lodge a complaint with their union after their employer stated that they could not leave, and stated to the employees that if they did not like the situation, "there's the door;" the Pennsylvania Supreme Court found that the employer's words lacked the finality and immediacy required to establish a discharge because the employer allowed the employees the opportunity to remain employed by completing their shift. 523 Pa. at 46, 565 A.2d at 130. The Supreme Court found that the "employees had been offered a real choice between alternatives and chose to leave their employment." *Id.* Here, Owner testified that he did not tell Claimant to get out, but asked Claimant if he would remove the duct tape, and after Claimant refused to remove the duct tape, he told Claimant that if he did not wear the badge as issued, he could not work. (R.H.T. at 299A.)

In unemployment compensation proceedings, the Board is empowered to resolve conflicts in and weigh the evidence, including determinations as to the credibility of witnesses; the Board is the ultimate finder of fact, and its findings are binding and conclusive on appeal if the record, when examined as a whole, contains substantial evidence to support those findings. *On Line Inc. v. Unemployment Compensation Board of Review,* 941 A.2d 786, 788 n. 7 (Pa.Cmwlth.2008). After careful examination of the entirety of the record, we are persuaded that there is substantial evidence, in the form of testimony from both Employer and from Claimant himself, via his internet initial claim report, that on January 23, 2012 Employer in fact offered Claimant a real choice between two alternatives: he could either wear the ID badge as required and continue his employment, or he could leave, and therefore end the work relationship, and Claimant *chose* to leave. We will not disturb the Board's determination that Claimant voluntarily quit his employment.

Turning to an issue raising rights guaranteed by the United States and Pennsylvania Constitutions, we consider Claimant's argument that even if this Court determines that he voluntarily resigned his employment, Claimant had necessitous and compelling reasons for doing so, because he was repeatedly harassed because of his religious beliefs and denied a simple accommodation. (Claimant's Brief at 15.) A claimant seeking benefits after voluntarily quitting his job has the burden to demonstrate that he had a necessitous and compelling reason for doing so. *Middletown Township v. Unemployment Compensation Board of Review,* 40 A.3d 217, 227–28 (Pa.Cmwlth.2012); *Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review,* 906 A.2d 657, 660 (Pa. Cmwlth.2006). To prove a necessitous and compelling reason for leaving employment, the claimant must show circumstances that

produced real and substantial pressure to terminate employment and would compel a reasonable person to act in the same manner, and must also show that he acted with ordinary common sense and made a reasonable effort to preserve his employment. *Middletown Township*, 40 A.3d at 228; *Brunswick Hotel & Conference Center*, 906 A.2d at 660. Whether or not a claimant had a necessitous and compelling cause for leaving employment is a question of law subject to this Court's plenary review. *Middletown Township*, 40 A.3d at 227, 228; *Brunswick Hotel & Conference Center*, 906 A.2d at 661.

In *Thomas v. Review Board of the Indiana Employment Security Division, et al.*, 450 U.S. 707, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981), the United States Supreme Court held that the State of Indiana's denial of unemployment compensation violated a claimant's first amendment right to free exercise of religion, where the claimant, a Jehovah's Witness, quit his job after he was transferred to a department that fabricated turrets for military tanks. In *Thomas*, the Supreme Court noted that the claimant's termination flowed from the fact that the employment, once acceptable, became religiously objectionable because of changed conditions. 450 U.S. at 718, 101 S.Ct. 1425. The Supreme Court stated "[w]here the state conditions receipt of an important benefit upon conduct proscribed by a religious faith, or where it denies such a benefit because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior or to violate his beliefs, a burden upon religion exists." 450 U.S. at 717–718, 101 S.Ct. 1425. Here, there is no evidence of changed conditions; Claimant was required to wear a badge containing the mission statement from the beginning of his employment, approximately one year and nine months prior, but did not feel compelled to cover it or voice any objections until January 24, 2012.

In *Monroe v. Unemployment Compensation Board of Review*, 112 Pa.Cmwlth. 488, 535 A.2d 1222, 1224 (1988), this Court held that an actual conflict between a claimant's sincerely held religious beliefs and his employment conditions may constitute cause of a necessitous and compelling nature for voluntary terminating employment. In *Monroe*, our Court remanded to the Board, for findings as to whether the claimant's beliefs were sincerely held and religious in nature, and if so, whether or not there was an actual conflict between those beliefs and the employer's job requirements. 535 A.2d at 1225–26.

*Sub judice*, we find that Claimant did not meet his burden because he offered no evidence as to any sincerely held religious beliefs, nor did he attempt to describe any actual conflict between a religious belief and Employer's requirement that the identification badge bearing the mission statement be worn. Owner testified at the initial hearing that his staff includes non-believers and members of other faiths besides his own; he stated that the mission statement was not a religious statement but rather a statement that sets forth certain values or basic rules for treating people. (H.T. at 62A.) Claimant argues before this Court that he was repeatedly harassed for his religious beliefs, but the hearing transcripts are devoid of such evidence, and the Board did not find that any such harassment occurred. Claimant admitted that he never spoke to anyone in management about his objections to the mission statement, and presented no evidence that he had ever requested an accommodation. (R.H.T. at 289A, 294A.) Owner testified that the mission statement had nothing to do with whether the employees who wore the iden-

tification badge containing it were "believers in the Lord;" he stated "[i]t doesn't say that if you read it, so everybody that works and I ask them and I tell them that we are a Christian company. We follow certain values ... I have [employees who are] Jewish. I have even [employees] that don't believe in the Lord ... we all follow basic rules when treating people how you want to be treated ... and that's what I'm saying with this." (H.T. at 62A.) The Board found that Employer does not require that employees share his religious beliefs. (F.F. ¶ 4.)

Based on the evidence before us, we find that Claimant failed to demonstrate a burden upon religion, and voluntarily quit his job with no necessitous and compelling reason to do so. Accordingly, we affirm the order of the Board.

## ORDER

AND NOW, this 9th day of April, 2013, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.