# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan Vigliotti, : 
: 
Petitioner : 
: 
v. : No. 872 C.D. 2016
: Submitted: October 21, 2016
Unemployment Compensation :
Board of Review, :
: 
Respondent :

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS** **FILED: January 25, 2017**

Susan Vigliotti (Claimant), *pro se*, petitions for review of the order of the Unemployment Compensation Board of Review (Board), holding that she is ineligible for unemployment compensation benefits under Section 402(b) of the Unemployment Compensation Law[1] because she voluntarily quit her job without a necessitous and compelling reason. We affirm.

Claimant was employed by South Hills Gastroenterology (Employer) in a full-time administrative position from July 27, 2015 through November 25,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, § 402(b), *as amended*, 43 P.S. § 802(b). Section 402(b) provides, in relevant part, that "[a]n employe shall be ineligible for compensation for any week … [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature …." *Id*.

2015. (Record Item (R. Item) 10, Referee's Decision, Finding of Fact (F.F.) ¶1.) The additional facts found by the referee and adopted by the Board concerning Claimant's separation from that employment are as follows:

2. Upon interviewing for the position, the employer notified the claimant that it would require proficiency in the use of a computer.

3. During the interview process, the claimant advised the employer that she was not proficient with the use of computers, but would do her best.

4. During the claimant's employment, the claimant began to experience difficulties utilizing a computer to perform her job duties and keeping up with the workflow in the office.

5. Sometime in late October or early November 2015, the employer's office manager gave the claimant a 90-day evaluation. The officer manager indicated to the claimant that the claimant was not as far along as the employer had expected and told the claimant that she would be given three more weeks to show improvement.

6. The claimant was being provided on-the-job training by other coworkers during her employment, but said coworkers did not always have sufficient time to spend with the claimant due to the high workload.

7. During her employment, the claimant did express concerns she had with her work performance with the office manager, who asked the claimant where she needed help.

8. Given that some of the areas that claimant was deficient in were areas where only the claimant could make efforts to improve, the claimant could not provide a specific answer to the employer.

9. The claimant voluntarily left her employment on November 25, 2015, due to her belief that she could not

adequately perform the duties of her position to the employer's satisfaction and to avoid a possible discharge.

(R. Item 10, Referee's Decision, F.F. ¶¶2-9.)

Claimant applied for unemployment compensation benefits on December 10, 2015, stating that her reason for leaving her employment was "to seek work," and further explaining that she is "not very good on the computer, was slow, [she] felt that [she] was learning but not fast enough for the job requirement, so it was very stressful to [her], [she] felt overwhelmed." (R. Item 2, Internet Initial Claim.) In her application, Claimant further described the types of work duties that had to be completed by the end of the day, explained that the job entailed more than 40 hours a week and she never knew when she was getting off work, and stated that she was "not sure they would keep [her], [she] was always told to step up" and she "felt that if there was a full staff, [she] might have learned better." (*Id.*)

Employer, in response, asserted that Claimant had voluntarily quit in order to seek other work and that Claimant did not care for medical office work. (R. Item 3, Employer Questionnaire.) On January 14, 2016, the Department of Labor and Industry's Office of Unemployment Compensation Benefits issued a determination that Claimant was ineligible for benefits because she had voluntarily quit her employment without a necessitous and compelling reason. (R. Item 5, Notice of Determination.) Claimant appealed, and the referee conducted a hearing on February 8, 2016 at which Claimant appeared and testified, but no representative from Employer appeared. (R. Item 9, Referee's Hearing Transcript (H.T.) at 1-15.)

3

On February 9, 2016, the referee issued a decision affirming the Office of Unemployment Compensation Benefits' determination. The referee determined that Claimant was ineligible for benefits because she had voluntarily left her job without necessitous and compelling reasons, concluding that she failed to establish that she was facing an imminent discharge and, in contending that she was unable to perform her job duties to Employer's satisfaction, failed to establish that continuing effort and training would not have led to an improvement. (R. Item 10, Referee's Decision at 2-3.) The referee reasoned that "voluntarily resigning one's employment due to dissatisfaction with one's skills and abilities and to avoid the possibility of discharge does not rise to the level of establishing a necessitous and compelling cause." (*Id*. at 3.)

Claimant appealed the referee's decision to the Board. On April 1, 2016, the Board issued an order adopting and incorporating the referee's findings and conclusions and affirming the referee's decision. (R. Item 20, Board Order.) Claimant requested reconsideration and the Board denied her request on May 2, 2016. (R. Item 17, Ruling on Request for Reconsideration of Board's Decision.) Claimant then filed the instant petition for review appealing the Board's order to this Court.[2]

Claimant contends that she showed a necessitous and compelling reason for leaving employment because Employer promised to provide her with sufficient training to become computer proficient, and failed to do so, thereby

---

[2] Our review of the Board's order is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Mathis v. Unemployment Compensation Board of Review*, 64 A.3d 293, 297 n.6 (Pa. Cmwlth. 2013).

4

rendering it necessary for her to resign from her employment or else be dismissed for lack of skills.

Because Claimant voluntarily quit her job, it was her burden to demonstrate that she had a necessitous and compelling reason for doing so. *Mathis v. Unemployment Compensation Board of Review*, 64 A.3d 293, 299 (Pa. Cmwlth. 2013); *Middletown Township v. Unemployment Compensation Board of Review*, 40 A.3d 217, 227-28 (Pa. Cmwlth. 2012); *Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review*, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). To prove a necessitous and compelling reason for leaving employment, the claimant must not only show circumstances that produced real and substantial pressure to terminate employment and would compel a reasonable person to act in the same manner, but must also show that she acted with ordinary common sense and made reasonable efforts to preserve her employment. *Mathis*, 64 A.3d at 299-300; *Middletown Township*, 40 A.3d at 228; *Brunswick Hotel & Conference Center*, 906 A.2d at 660. We find no error in the Board's conclusion that Claimant failed to satisfy that burden.

The Board determined that Claimant left her employment to avoid a possible discharge, and because she believed that she could not adequately perform her duties to Employer's satisfaction. This Court has consistently held that the mere possible future termination of employment does not constitute a necessitous and compelling reason for quitting. *Department of the Navy v. Unemployment Compensation Board of Review*, 650 A.2d 1138, 1140 (Pa. Cmwlth. 1994); *Gackenbach v. Unemployment Compensation Board of Review*, 414 A.2d 770, 771 (Pa. Cmwlth. 1980) (resignation was not deemed necessitous and compelling where an unfavorable performance evaluation created no imminent threat of

5

termination but merely a possibility of a future occurrence, at least three to four months away); *Rizzitano v. Unemployment Compensation Board of Review*, 377 A.2d 1060 (Pa. Cmwlth. 1977) (employer's threat that a claimant would be fired if he did not increase productivity created no more than a possibility of future discharge and did not justify his termination of employment).

Here, the Board's finding that Claimant did not face imminent discharge is supported by substantial, competent evidence in the record. Claimant's own testimony establishes not that she had received any indication from Employer that her discharge was imminent, but rather that she herself felt that she could not do her job: she "was learning but not fast enough for the job requirement" (R. Item 2, Internet Initial Claim); to her, "it seemed like no matter how hard [she] tried, [she] couldn't seem to grasp it" (R. Item 9, H.T. at 10); she "left because [she] could not perform the job" (*Id.*, H.T. at 11). The referee questioned Claimant as to whether she was given a deadline to improve and Claimant replied, "I think she was going to give me another three weeks." (*Id.*, H.T. at 10.) The referee asked Claimant what the office manager told her would happen after three weeks, and Claimant replied, "[s]he didn't, but it kind of said like if I – to [me] I took it as if I don't catch on in three weeks I'd be gone." (*Id.*) Claimant testified further that about a week later, a coworker "yelled about what [Claimant] was doing" in front of her coworkers, but Claimant did not complain to the office manager about her coworker's behavior because she felt as though it would not do her any good. (*Id.*, H.T. at 7.) Instead, Claimant gave the office manager her two-week notice, telling the office manager that she "couldn't do the job." (*Id.*, H.T. at 4.) The referee questioned Claimant as to whether she left her employment because she believed she would be fired, or whether she just believed

that she could not perform her job duties, and by way of response, Claimant stated that there was another woman at the office who had been there for three years, and that woman was constantly being reprimanded for failure to do her job. (*Id*., H.T. at 5-6.) Claimant also testified that there were various other reasons why she was dissatisfied with the job, citing problems at home and stress caused there by the fact that she was not making enough money. (*Id*., H.T. at 10.)

Before this Court, Claimant asserts that she was promised, but did not receive adequate training. However, although Claimant was provided on-the-job training by other coworkers during her employment, there is no finding that Claimant was guaranteed a specific level of training. The Board found that Claimant had testified that the coworkers did not always have sufficient time to spend with her due to the high workload. (R. Item 10, Referee's Decision, F.F. ¶ 6.) The referee asked Claimant whether, when Claimant spoke to the office manager about her difficulties with the computer, the office manager provided any other training to try to assist her; Claimant responded, "[the office manager] told me to let her know how she could help me, and I said I will, and I tried, but how do you help me whenever I'm on the phone with a patient and I can't find my way around the computer…I wasn't fast enough to put a new person into the computer system and do the window." (R. Item 9, H.T. at 10.) By Claimant's own testimony, she was learning, but not fast enough, and therefore the job was causing her stress. The referee found that Claimant was made aware during the interview process that the position would require proficiency with the use of a computer, and Claimant acknowledged that she was told she was given additional time in which to show improvement. (R. R. Item 10, F.F. ¶¶ 2, 5.)

7

Because the Board's determinations that Claimant failed to show necessitous and compelling reasons for her voluntary resignation are factually supported and legally correct, we affirm the Board's denial of benefits.

_____
JAMES GARDNER COLINS, Senior Judge

8

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Susan Vigliotti, :
:
Petitioner :
:
v. : No. 872 C.D. 2016
:
Unemployment Compensation :
Board of Review, :
:
Respondent :

# **O R D E R**

AND NOW, this 25th day of January, 2017, the order of the Unemployment Compensation Board of Review in the above-captioned matter is hereby AFFIRMED.

_____
JAMES GARDNER COLINS, Senior Judge