IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Zarinah Wakkil,                          :
                    Petitioner          :
                                         :
        v.                               :    No. 548 C.D. 2018
                                         :    SUBMITTED:  September 28, 2018
Unemployment Compensation               :
Board of Review,                         :
                    Respondent          :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED:  December 20, 2018

        Zarinah Wakkil (Claimant) petitions for review, *pro se*, of the February 28, 2018

Order of the Unemployment Compensation Board of Review (Board) affirming the

Referee's decision to deny Claimant unemployment compensation (UC) benefits.  The

Board concluded that Claimant was ineligible for UC benefits under Section 402(e) of

the Unemployment Compensation Law (Law)[1] because she was discharged from work

for willful misconduct.  We affirm the Board's Order.[2]

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).
Section 402(e) of the Law states that an employee shall be ineligible for UC benefits for any week
"[i]n which his unemployment is due to his discharge or temporary suspension from work for willful
misconduct connected with his work."  43 P.S. § 802(e).

[2] In its brief, the Board asks this Court to dismiss Claimant's Petition for Review as untimely
filed.  The Board issued its Order on February 28, 2018, so Claimant was required to file her Petition
for Review within 30 days of that date, or by March 30, 2018.  Claimant filed her first *pro se*
communication with this Court on April 2, 2018.  However, March 30, 2018 was Good Friday, and
our Court was closed for the holiday.  When the last day of the appeal period falls on a Saturday,
Sunday, or legal holiday, that day is omitted from the computation.  *See* 1 Pa. C.S. § 1908.

**Background**

Claimant worked as a full-time emergency medical technician (EMT) for Healthfleet Ambulance, Inc. (Employer) from November 4, 2016 through August 18, 2017. Bd.'s Finding of Fact (F.F.) No. 1; Ref.'s F.F. No. 1. Employer had a policy requiring its EMTs to complete an incident report whenever a patient, a facility, or a third party alleged that an incident occurred. Ref.'s F.F. No. 3. Claimant knew that she was required to complete an incident report whenever an incident was alleged. Bd.'s F.F. No. 2. In mid-August 2017, Claimant completed an incident report after she was accused of injuring a patient, but Employer told her that her report was insufficient and needed to be re-written. *Id.* No. 3; Notes of Testimony (N.T.), 10/31/17, at 6.

On August 18, 2017, a hospital informed Employer that Claimant and her partner had injured a patient with a traumatic brain injury while transporting him from the hospital to a rehabilitation facility. Bd.'s F.F. No. 4; Ref.'s F.F. No. 6(b)-(c). Employer's dispatcher notified Claimant and her partner of the accusation and told them to write an incident report. Bd.'s F.F. No. 5. Claimant stated she would not write an incident report because nothing happened. *Id.* No. 6. The dispatcher told Claimant and her partner that they were required to complete an incident report regardless of what happened. *Id.* No. 7. Claimant did not want to complete an incident report because she believed it would adversely impact her ability to receive a raise. *Id.* No. 8.

Due to the patient injury accusation and other personal matters, Claimant was emotionally distraught and unable to continue working, so she asked her partner to drive them back to Employer's base without picking up the next patient. *Id.* No. 9; Ref.'s F.F. No. 6(f). Claimant then clocked out and went home without completing the

Accordingly, because Friday, March 30, 2018 was a legal holiday, Claimant's appeal, filed on Monday, April 2, 2018, was timely.

2

incident report. Bd.'s F.F. No. 10.[3] Claimant's partner was unable to work alone, so she also clocked out and went home without completing the incident report. *Id.* No. 11.

Employer removed both Claimant and her partner from its schedule for refusing to complete an incident report and for abandoning their shifts. *Id.* No. 12. Employer later rehired Claimant's partner after she apologized, but it did not rehire Claimant. *Id.* No. 13; Ref.'s F.F. No. 8.

Claimant filed a claim for UC benefits with the local Service Center. The Service Center found, based on the initial claim record, that Employer discharged Claimant "for an unknown reason." Notice of Determination, 9/14/17, at 1. The Service Center also determined that "Claimant did not admit to the incident which caused the separation and the Employer did not provide information to show the Claimant was involved in the incident that caused the separation." *Id.* Because the Service Center found that Employer did not sustain its burden of proof, it determined that Claimant was eligible for benefits under Section 402(e) of the Law. *Id.*

Employer timely appealed to the Referee, who held a hearing on October 31, 2017. Claimant and Employer's general manager, Ryan Buckman, testified at the hearing. Following the hearing, the Referee concluded that Claimant was ineligible for UC benefits under Section 402(e) of the Law because she was discharged from work for willful misconduct. Ref.'s Order, 11/6/17, at 3. The Referee explained her decision as follows:

> Pennsylvania courts have held that refusal to follow a reasonable employer directive without good cause is generally work-related willful misconduct. In this case, regarding [C]laimant refusing to pick up the next patient (apparently causing the partner not to be able to), [C]laimant did credibly establish that she was too emotionally upset to properly perform

---

[3] In her Record of Oral Interview, Claimant stated that she clocked out between 1:30 p.m. and 3:00 p.m., but her shift was not scheduled to end until 10:00 p.m. Record Item No. 4.

that task. The record does not show, however, that she explained this properly to [E]mployer. Apparently she had her partner speaking to the dispatcher[,] but it was unclear what information was transmitted. [Claimant's] fail[ure] to do that, therefore, does not constitute work-related willful misconduct. *When [C]laimant arrived at the base, however, she continued to refuse to write an incident report.* While [C]laimant is credible that there was no "incident", *she was aware someone was making an allegation that something happened when transporting the brain-injured patient[,] and she did not establish why she could not have written a report describing how they transported him and that it occurred without any incident.*

*Id.* at 2-3 (emphasis added). Therefore, the Referee reversed the Service Center's decision.

Claimant timely appealed to the Board, which affirmed the Referee's decision. The Board concluded:

[C]laimant disputes that there was a policy that required her to complete an incident report. [E]mployer's general manager was credible on this point, but it does not matter because a reasonable directive must also be complied with, so the standard for these purposes is roughly the same.

*Whether by policy or directive, [C]laimant knew that she was required to complete an incident report and she refused.* The burden then shifts to her to show good cause. [C]laimant felt an incident report was unnecessary because no incident occurred. If that were the case, the incident report could have reflected that. [C]laimant also cited [her] fear that future raises would be impacted. *Neither circumstance[] justifies [C]laimant's refusal to complete the incident report, so benefits must be denied under Section 402(e) of the Law on this basis alone[]* . . . .

That [C]laimant's partner was rehired is also immaterial because they were not similarly situated based on the partner's apology for her actions.

4

Bd.'s Order, 2/28/18, at 2-3 (emphasis added). Claimant now appeals from that decision.[4]

## Issue

Did the Board err in concluding that Claimant committed willful misconduct under Section 402(e) of the Law?[5]

## Analysis

Our Court has defined "willful misconduct" as a wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior that the employer has a right to expect of its employees, or negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations. *Miller v. Unemployment Comp. Bd. of Review*, 83 A.3d 484, 486-87 (Pa. Cmwlth. 2014). An employer seeking to prove that a claimant committed willful misconduct by violating a work policy "must demonstrate the existence of the policy, its reasonableness, and its violation." *Klampfer v. Unemployment Comp. Bd. of Review*, 182 A.3d 495, 500 (Pa. Cmwlth. 2017). The employer must also prove that the claimant intentionally or deliberately violated the policy. *Chester Cmty. Charter Sch. v. Unemployment Comp. Bd. of Review*, 138 A.3d 50, 54 (Pa. Cmwlth. 2016).

---

[4] Our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[5] In her Petition for Review, Claimant also challenges the determination that she was discharged because Employer's initial appeal to the Referee indicated that she voluntarily quit. Pet. for Review, 4/20/18, at 1. Claimant, however, did not raise that issue in her appeal to the Board, nor does she address it in her brief filed with this Court. Therefore, it is waived. *See Rapid Pallet v. Unemployment Comp. Bd. of Review*, 707 A.2d 636, 638 (Pa. Cmwlth. 1998).

If the employer satisfies its burden of proving "the existence of a reasonable work rule and its deliberate violation, [then] the burden shifts to the claimant to demonstrate good cause for violating the rule." *Id.*; *see also Frumento v. Unemployment Comp. Bd. of Review*, 351 A.2d 631, 634 (Pa. 1976) (recognizing that an employee's refusal to comply with an employer's reasonable request, without good cause, is a disregard of the standards of behavior that the employer has a right to expect of its employee). A claimant establishes good cause for violating a work rule by showing that his or her action was "justifiable or reasonable under the circumstances." *Frumento*, 351 A.2d at 634.

Here, Employer established that it had a policy requiring its EMTs to complete an incident report whenever an incident was alleged. Mr. Buckman explained Employer's policy as follows:

> [Claimant] was not being accused of doing anything wrong. An [i]ncident [r]eport is something that we have to do, that we're mandated to do by the [f]acility, because when facilities have a reportable incident, we must provide documentation and an investigation of what happened, whether it was – there was no incident.

N.T., 10/31/17, at 10. The Board credited this testimony. Bd.'s Order, 2/28/18, at 2; Bd.'s F.F. No. 2. It is well settled that the Board is the ultimate factfinder in UC cases and empowered to determine the credibility of witnesses. *Curran v. Unemployment Comp. Bd. of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000). The Board's factual findings are conclusive on appeal if the record, as a whole, contains substantial evidence to support them. *Mathis v. Unemployment Comp. Bd. of Review*, 64 A.3d 293, 299 (Pa. Cmwlth. 2013).

The Board also found that Claimant was aware of Employer's policy, as she had been directed to write an incident report in a prior, unrelated matter and complied with

6

that directive. Bd.'s F.F. Nos. 2, 3. Despite Claimant's knowledge of Employer's policy, however, Claimant refused to complete an incident report in this case. *Id.* Nos. 6, 8; *see* N.T., 10/31/17, at 8-9.[6] We conclude that the record establishes that Employer's policy was reasonable and that Claimant deliberately violated the policy.

Because Employer satisfied its burden of proof, Claimant was required to demonstrate good cause for her refusal to comply with Employer's directive. *See Chester*, 138 A.3d at 54; *Frumento*, 351 A.2d at 634. Based on Claimant's own testimony, the Board found that Claimant did not write the incident report because she believed that no incident occurred and that an incident report would adversely impact her ability to receive a raise. Bd.'s F.F. Nos. 6, 8. According to Claimant, "we get raises and things like that every year. Every time you do a[n incident] report, you're . . . saying that the incident occurred. An incident did not occur, so why would I do an [i]ncident [r]eport?" N.T., 10/31/17, at 9.[7] We agree with the Board that neither of Claimant's proffered reasons justified her failure to write an incident report. Bd.'s Order, 2/28/18, at 2. As the Board correctly found, if Claimant believed that no incident occurred, then "the incident report could have reflected that." *Id.*; *see also* Ref.'s Order, 11/6/17, at 3 ("[Claimant] was aware someone was making an allegation

---

[6] In her appellate brief, Claimant asserts that she "was actually never made aware until returning to [Employer's] base that a report needed to be written[,] at which time [Claimant] agreed to write [it]." Claimant's Br. at 11. This assertion, however, directly conflicts with Claimant's testimony at the hearing. The Referee inquired about what happened after Claimant returned to Employer's base on the day in question. The Referee asked Claimant, "[Y]ou didn't ask [your supervisor] anything specifically about this report that they wanted?" to which Claimant replied, "*I already knew what the report consisted of. And, I already stated that I was not doing a report.*" N.T., 10/31/17, at 9 (emphasis added).

[7] Claimant also testified that there were "a number of things going on in my life, and I had just – [my partner and I] got in trouble earlier that week. We were, again, accused of ripping a patient's, or hurting a patient because he was bleeding. It was the second time we were told we had to do an [i]ncident [r]eport . . . ." N.T., 10/31/17, at 6.

7

that something happened when transporting the brain-injured patient[,] and she did not establish why she could not have written a report describing how they transported him and that it occurred without any incident.").

Claimant also testified that her decision to return to Employer's base mid-shift without picking up the next patient was justified because

> according to the Department of Health, as the care provider, my safety comes first. If I'm in some type of emotional distress, I cannot give the proper care to my patient. Therefore, I did the right thing by actually, at that time, to contact [sic] [Employer] and let them know I was coming back to [b]ase.

N.T., 10/31/17, at 7. The Referee credited this testimony, finding that "regarding [C]laimant refusing to pick up the next patient[,] . . . [C]laimant did credibly establish that she was too emotionally upset to properly perform that task." Ref.'s Order, 11/6/17, at 2-3; *see* Bd.'s F.F. No. 9. However, even if Claimant was too emotionally distraught to continue transporting patients, that did not excuse her failure to complete an incident report, as mandated by Employer's policy, when she returned to base. Therefore, we conclude that Claimant failed to establish good cause for violating Employer's policy.[8]

---

[8] In her appellate brief, Claimant asserts that Employer re-hired her in February 2018, thereby demonstrating that her discharge "was simply an issue of miscommunication." Claimant's Br. at 13. Such evidence, however, was not part of the record before the Board. While Claimant did mention her reinstatement in her Request for Reconsideration filed with the Board, she does not develop any argument regarding the Board's denial of reconsideration in her brief with this Court. Thus, Claimant has waived any challenge to the Board's denial of reconsideration. *See Rapid Pallet*, 707 A.2d at 638.

## Conclusion

Based on the evidence of record, we conclude that Claimant was discharged for willful misconduct under Section 402(e) of the Law and is, therefore, ineligible for UC benefits. Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Zarinah Wakkil,                  :
          Petitioner        :
                           :
   v.                     :   No. 548 C.D. 2018
                           :
Unemployment Compensation  :
Board of Review,            :
          Respondent    :

O R D E R

AND NOW, this 20th day of December, 2018, the Order of the Unemployment Compensation Board of Review, dated February 28, 2018, is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge