IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Sharen M. Anderson, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 1032 C.D. 2018 |
| | : | SUBMITTED: December 28, 2018 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                         FILED:  January 31, 2019

Sharen M. Anderson (Claimant) petitions for review, *pro se*, of the June 27, 2018 Order of the Unemployment Compensation Board of Review (Board) affirming the Referee's decision and concluding that Claimant was financially ineligible for unemployment compensation (UC) benefits under Section 404 of the Unemployment Compensation Law (Law).[1]  We affirm the Board's Order.

## **Background**

Following her separation from employment with the Pennsylvania Department of Human Services (Employer), Claimant filed an application for UC benefits effective February 18, 2018, thereby establishing a base-year period from October 1, 2016

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 804. Section 404 of the Law provides that in order to financially qualify for UC benefits, an employee must have sufficient high quarter and total qualifying base-year wages in covered employment, as set forth in a table titled "Rate and Amount of Benefits."  43 P.S. § 804.

through September 30, 2017.[2] Bd.'s Finding of Fact (F.F.) No. 1; Notes of Testimony (N.T.), 5/11/18, at 1.[3] Employer reported to the Department of Labor and Industry (Department) that it paid Claimant the following gross quarterly wages during her base-year period:

> Fourth quarter 2016 = $7,413
> First quarter 2017 = $4,119
> Second quarter 2017 = $0
> Third quarter 2017 = $0
> Total = $11,533

Bd.'s F.F. No. 2.[4]

Claimant last worked for Employer on January 12, 2017. *Id.* No. 3. Claimant's highest quarter during her base-year period was the fourth quarter of 2016, when Claimant received wages in the amount of $7,413. *Id.* No. 4. Claimant's total amount of qualifying base-year wages was $11,533. *Id.* No. 5.

On February 23, 2018, the Department issued a Notice of Financial Determination, finding Claimant financially ineligible for UC benefits. Record (R.) Item No. 1. Claimant appealed, asserting that qualifying wages were missing from the third quarter of 2017 – namely, cash payments that she received from her 13-year-old grandson, Grant Anderson (Grandson), for providing transportation services to him.[5]

---

[2] The certified record contains no details about Claimant's prior employment with Employer. The record does not indicate what position Claimant held with Employer, how long she worked for Employer, or the reason for her separation from employment.

[3] The Board adopted and incorporated the Referee's Findings of Fact and Conclusions of Law in their entirety. Bd.'s Order at 1.

[4] This wage total, which appears in several documents in the certified record, appears to be a typographical error, as the sum of $7,413 and $4,119 is $11,532.

[5] In the various agency documents in the certified record, both the Pennsylvania Department of Human Services and Grandson are identified as Claimant's employers. To avoid confusion, we

2

The Department vacated its Notice of Financial Determination to perform a wage investigation. R. Item No. 4. Following its investigation, the Department determined that Claimant was employed by Grandson as an independent contractor during the third quarter of 2017 and, thus, the missing wages were not earned in covered employment. R. Item No. 1.

On April 16, 2018, the Department issued a revised Notice of Financial Determination, finding Claimant financially ineligible for UC benefits. R. Item No. 4. Based on the wages reported by Employer during Claimant's base-year period, Claimant's highest quarter was the fourth quarter of 2016, when she was paid wages in the amount of $7,413, and her total qualifying base-year wages were $11,533. *Id.* Under Section 404(e) of the Law, 43 P.S. § 804(e), in order to qualify for UC benefits, Claimant was required to have total base-year wages of $11,805. *Id.* Because Claimant's total base-year wages fell below that amount, the Department found that she was financially ineligible for UC benefits under Section 404 of the Law. *Id.*

Claimant timely appealed to the Referee. In her Petition for Appeal, Claimant did not dispute her quarterly or total base-year wages as reported by Employer. Rather, Claimant asserted that she received additional qualifying wages during her base-year period from other employment. *Id.* Specifically, Claimant averred that Grandson paid her $875 in the third quarter of 2017 as remuneration for driving him to his school and social activities. *Id*; *see* R. Item Nos. 2, 3.[6]

---

refer to the Pennsylvania Department of Human Services as "Employer" and to Grant Anderson as "Grandson" in this Opinion.

[6] According to Claimant, after her daughter had lost her driving privileges, Claimant "agreed that she would provide transportation for [G]randson and that the agreement of employment would be exclusively between herself and [G]randson." Claimant's Br. at 7.

The Referee held an evidentiary hearing on May 11, 2018. Claimant appeared *pro se* and testified on her own behalf. Neither Grandson nor Employer appeared at the hearing.[7] Claimant testified that she lives with Grandson and his mother, who is disabled. N.T., 5/11/18, at 9. In the summer of 2017, Claimant agreed to drive Grandson to his school and social activities for a rate of $125 per week. *Id.* at 10-11. Claimant testified:

> [Grandson and his mother] live in the bottom half of the house; I live in the top half of the house, so we're very involved with one another's lives. My daughter did something stupid; I'm not going to go into her details, last year and lost her driver's privileges, and [G]randson, the school year was near starting and he goes to a school where there's a lot of Jewish children and so he -- and he's 13 . . . . So, he was going to bar mitzvahs once every couple of weeks almost. He also is involved in something called Science Olympiad where they go out on -- they go on weekend trips to competitions and so on and so forth. So -- and then there is always the thing of after school this and doctor's appointments and so on and so forth. . . .
>
> [W]e came to the [$]125 figure because of the money that [Grandson] makes, he doesn't make much . . . . [Grandson] paid me in cash. Sometimes what he did[,] because his mother is disabled he gets his little Social Security check, sometimes he just gave me the Social Security check for the month and let me deposit it in my account.

*Id.* at 9-10. Claimant testified that she provided transportation services to Grandson from mid-August 2017 through mid-February 2018. *Id.* at 10.

Janelle Whalen, a UC tax agent, testified via telephone. Ms. Whalen testified that any wages Claimant received from Grandson were not qualifying wages because

---

[7] Although the Referee mailed a Notice of Hearing to Grandson in advance of the hearing, he did not appear. Notes of Testimony (N.T.), 5/11/18, at 1-3 & Ex. E-3. Employer submitted Claimant's payroll records to the Referee in lieu of its attendance at the hearing. *Id.*, Ex. E-2.

4

Grandson was not a registered employer with the Department. She explained that for an individual to qualify as an employer for UC purposes,

> you need to be registered with [the Department's Tax Services Division], which means you would fill out a PA-100, which is a business enterprise registration form that indicates that you are an employer and you are paying wages that are reportable and taxable. That was not done. You would fill out quarterly reports if you are an employer, and you would pay taxes on the wages that were paid. That is not – [Grandson] is not coded or registered with [the Department's Tax Services Division], so therefore he is not a coded employer; therefore, the wages would not be covered.

*Id.* at 15. Ms. Whalen further testified that she tried calling Grandson to inquire into the matter, but "he did not return my phone calls in order to get additional information." *Id.* at 13.

Following the hearing, the Referee determined:

> [G]randson for whom the Claimant provided transportation services was 13 years of age at the time of the agreement. Notwithstanding [G]randson being a minor and his inability to enter into a legal employment agreement or contract, the record contains no information to indicate that [G]randson established an unemployment compensation employer account or deducted taxes from any payments made to the Claimant.

> Additionally, given that [G]randson was a minor and could not execute a contract, . . . [G]randson's mother[,] who was the Claimant's daughter[,] . . . was the legal [guardian] who could make legal decisions on behalf of her minor children.

> However, under [Section 4(*l*)(4)(5) of the] Law, [43 P.S. § 753(*l*)(4)(5)],[8] services performed by an individual in the employ of his son, daughter, or spouse are excluded for purposes of calculating financial eligibility for UC benefits.

---

[8] Section 4(*l*)(4)(5) of the Law excludes from the definition of "employment" any "[s]ervice performed by an individual in the employ of his son, daughter, or spouse, and service performed by a child under the age of eighteen (18) in the employ of his father or mother." 43 P.S. § 753(*l*)(4)(5).

5

Ref.'s Order at 2. Because Claimant failed to establish that the payments in question qualified as covered wages under the Law, the Referee determined that Claimant was financially ineligible for UC benefits.

Claimant timely appealed to the Board, which adopted the Referee's Findings of Fact and Conclusions of Law and affirmed the Referee's decision. The Board specifically discredited Claimant's testimony that she was employed by Grandson, stating:

> [C]laimant continues to insist on appeal that she had additional earnings as a driver for [G]randson. To the extent that the Referee did not render a clear credibility determination regarding her testimony in this regard, *the Board supplements his decision by determining [C]laimant's testimony not to be credible for the grounds outlined in the Referee's Decision: namely [G]randson's lack of capacity as a minor to enter into a binding contract, [G]randson's failure to register as an employer with the Department or deduct taxes from payments made to [C]laimant, and [Claimant's] obvious attempt to circumvent . . . Section 4[(l)(4)](5) of the Law's exclusion of services performed in the employ of a son or daughter.* In the latter respect, the record fails to adequately substantiate how [G]randson had the legal or financial ability to hire [C]laimant in an employer-employee relationship independent of his mother[,] [C]laimant's daughter[,] whose payments to [C]laimant would have been excluded outright under Section 4[(l)(4)](5) [of the Law]. Although [C]laimant alluded to a "little Social Security check for the month," which [G]randson supposedly receives, she also admitted that he did not make the $125/week allegedly paid to [C]laimant.

Bd.'s Order at 1 (emphasis added). Therefore, the Board concluded that Claimant was financially ineligible for UC benefits under Section 404 of the Law. *Id.* Claimant now petitions for review of that decision.[9]

---

[9] Our scope of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

6

## Issues

(1) Did Claimant present substantial evidence to prove that she had an employment relationship with Grandson, such that the wages she received from Grandson qualified her to receive UC benefits?

(2) Did the Board err in rejecting Claimant's testimony and in making its own credibility determination?

## Analysis

First, Claimant asserts that the evidence established that she had sufficient earnings to qualify for UC benefits and the Board erred in disregarding the wages she received from Grandson during the third quarter of 2017.

A UC claimant has the burden to prove his or her financial eligibility for UC benefits. *Pagliei v. Unemployment Comp. Bd. of Review*, 37 A.3d 24, 26 (Pa. Cmwlth. 2012). Here, it is undisputed that, based solely on her wages from Employer, Claimant did not qualify financially for UC benefits under Section 404 of the Law. Thus, Claimant alleged that she was employed by Grandson in the third quarter of 2017, during which Grandson paid her $125 per week in exchange for driving him to his school and social activities.

At the hearing, Claimant testified that she earned a total of $875 in the final quarter of her base year for providing transportation services to Grandson. N.T., 5/11/18, at 9-10. Critically, however, the Board discredited Claimant's testimony. The Board did not believe that Grandson, who was only 13 years old, could afford to pay Claimant $125 per week, as Claimant alleged, without help from his mother, *i.e.*, Claimant's daughter. Under Section 4(*l*)(4)(5) of the Law, any payments from Claimant's daughter would be excluded from Claimant's base-year wages. *See* 43 P.S. § 753(*l*)(4)(5). As such, the Board reasoned that Claimant was attempting to

7

circumvent the Law's requirements by claiming that she was paid directly by Grandson rather than by her daughter. It was within the Board's discretion to reject Claimant's testimony as not credible. *See Russo v. Unemployment Comp. Bd. of Review*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010).

In support of her claim, Claimant also relied on a document signed by Grandson, which listed Claimant's weekly wages from August 2017 through February 2018. N.T., 5/11/18, Service Ctr. Ex. 5; *see* R. Item No. 2. The document, however, contained what appeared to be inaccurate information. N.T., 5/11/18, at 12.[10] Claimant testified that she corrected the errors by hand and submitted a revised wage document to the Department; however, the revised document was not signed by Grandson. *Id.* at 10, 12-13; *see* R. Item No. 4. As Ms. Whalen observed, "I have no proof of these earnings. Nothing was given to me other than this paper that is signed with the incorrect dates. I have no proof that this money was actually earned [by Claimant]." N.T., 5/11/18, at 15. Moreover, the Board found that Grandson was not registered as an employer with the Department, did not have a UC employer account, and did not deduct taxes from his payments to Claimant. Bd.'s Order at 1; Ref.'s Order at 2. Therefore, we agree with the Board that Claimant failed to satisfy her burden of proving that she was financially eligible for UC benefits based on the wages paid by Grandson.

Next, Claimant asserts that the Board improperly discredited her testimony regarding her employment relationship with Grandson. Claimant's only basis for challenging this credibility determination is that, according to Claimant, the Board was not permitted to make factual findings or credibility determinations and that only the

---

[10] Ms. Whalen testified that "on the breakdown sheet that was submitted, the pay dates, they don't correspond, they don't correlate. If you look at 11/24/17 it said it was paid on 3/3/17, then the next one said it was paid on 9/3/17, and then 2/3/17 and 3/3/17. That doesn't correlate with the so-called week ending dates." N.T., 5/11/18, at 12.

Referee was permitted to make factual findings. Claimant's Br. at 13-14. This claim is belied by our case law.

It is well settled that "*[t]he [Board], not the [R]eferee*, is the ultimate fact[-]finding body and arbiter of credibility in [UC] cases." *Deal v. Unemployment Comp. Bd. of Review*, 878 A.2d 131, 133 n.2 (Pa. Cmwlth. 2005) (emphasis added). "Questions of credibility and the resolution of evidentiary conflicts are *within the discretion of the [Board]* and are not subject to re-evaluation on judicial review." *Bell v. Unemployment Comp. Bd. of Review*, 921 A.2d 23, 26 n.4 (Pa. Cmwlth. 2007) (emphasis added). In fact, "the Board . . . may reject even uncontradicted testimony if it is deemed not credible or worthy of belief." *Stockdill v. Unemployment Comp. Bd. of Review*, 368 A.2d 1341, 1343 (Pa. Cmwlth. 1977).

We conclude that the record contains substantial evidence to support the Board's factual findings, including its decision to discredit Claimant's testimony regarding her employment relationship with Grandson. *See Mathis v. Unemployment Comp. Bd. of Review*, 64 A.3d 293, 299 (Pa. Cmwlth. 2013) (stating that the Board's factual findings are conclusive on appeal if the record, as a whole, contains substantial evidence to support them). Therefore, we agree with the Board that Claimant was financially ineligible for UC benefits under Section 404 of the Law.

### Conclusion

Accordingly, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sharen M. Anderson,          :
              Petitioner     :
                       :
      v.                 :   No. 1032 C.D. 2018
                       :
Unemployment Compensation  :
Board of Review,          :
              Respondent    :

## O R D E R

AND NOW, this 31st day of January, 2019, the Order of the Unemployment Compensation Board of Review, dated June 27, 2018, is hereby AFFIRMED.

 

_____
ELLEN CEISLER, Judge